# THEA NILSSON v. BARNETT & RECORD COMPANY.[1]

November 7, 1913.

Nos. 18,213—(57).

**Verdict sustained by evidence.**

1. In this action for wrongful death the evidence justified a finding that decedent, sent down by defendant, his employer, from a high ore dock where he was working to the ice underneath to gather bolts and spikes, was, while so engaged, killed by a car stake falling from the upper edge of the dock where it had been left for more than half an hour across a 16-inch timber laid along such edge.

**Safe place to work — duty of master.**

2. The defendant was then engaged in extensive repairs upon this ore dock, employing thereon some 70 men in charge of a foreman who set the men to work in such place as he saw fit. This foreman was on top of the dock when he directed deceased to go down and gather the bolts. The jury were justified in finding that the foreman knew, or in the exercise of ordinary care should have known, that the stake in question was liable to fall and injure anyone set to work underneath upon the ice, and also in finding that such foreman was charged with defendant's nondelegable duty to use ordinary care to see that the place wherein a servant is set to work is reasonably safe and so maintained.

[1] Reported in 143 N. W. 789.

---

Note.—For different forms of statement of the general rule with respect to the master's duty as to places and appliances furnished to servant, see note in 6 L.R.A.(N.S.) 602. And as to the delegability of master's duty to instruct or warn servants as to working place and perilous operations, see note in 26 L.R.A. (N.S.) 633.

**Negligence of fellow servant immaterial.**

3. If the jury found that defendant was negligent in failing to provide a reasonably safe place for decedent, in that said stake was so suffered to remain while he was set to work underneath, it becomes unimportant to determine who placed the stake in the dangerous position or the precise cause of its fall, there being no evidence tending to show that the stake was wilfully dislodged by any one.

**Evidence did not warrant directed verdict.**

4. The defendant was not entitled to a directed verdict, nor to judgment *non obstante veredicto*.

Action in the district court for St. Louis county by the administratrix of the estate of Olof Nilsson, deceased, to recover $5,000 for the death of her intestate while in defendant's employ. The answer alleged upon information and belief that the injury to decedent was the result of his carelessness and that of his coemployees, or was a result of the risk and danger incident to the work in which he was engaged, all of which risks and dangers were known to exist and appreciated by deceased and voluntarily assumed by him. The case was tried before Cant, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict for the amount demanded. Defendant's motion for judgment notwithstanding the verdict was denied. From the judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*Alexander Marshall* and *P. J. McLaughlin,* for appellant.
*John Jenswold, Jr.* for respondent.

HOLT, J.

The action is for the wrongful death of a servant. A recovery was had. The master appeals from the judgment.

The defendant, appellant here, is a corporation and in March, 1910, was repairing and partially rebuilding a large ore dock in Duluth. The dock extended out into the bay on piling some 1,500 feet. At this time the ice in the bay was solid. The dock was nearly 60 feet wide, with two railway tracks running the entire length on top thereof, the center of each track being 8 feet and 2 inches from the bull rail, a timber 16 inches square laid on top and along the

outer edge of the dock. It was almost 70 feet from the top of this rail to the ice below. Under the railway tracks were the ore bins or pockets about 25 feet deep. In a cross section of the dock these pockets would appear like the capital letter M inverted, the outside walls thereof dropping down perpendicularly from under the bull rail and the inside walls sloping to a point or angle at the bottom. Every 12 feet these walls so meeting were partitioned off, thus forming a succession of bins or pockets under each of the two railway tracks. Near the bottom of each pocket and on the outside wall was an opening with spout by which to load the ore into the boats for transportation.

The work consisted in removing the decayed and unsound planking and timbers and replacing them with new. From 60 to 70 men were working on the job. The inside of the pockets were lined with heavy hardwood planks. The floor on top of the dock was relaid with fir planking. The lumber needed was brought down by the carload, left on top of the dock and unloaded between the two tracks. Sometimes as many as three cars were thus brought down and unloaded in a day and, then again, a day or so passed without any car being received. A foreman was always on the works and directed the men what to do. Some were unloading this lumber from the railway cars, some were loading it into a dump car to be moved to places where it was to be used or sawed into the proper lengths, some were lining the pockets and laying the floors therewith. The cars upon which the lumber was brought onto the dock were the ordinary railway flat cars, with six or more sockets on each side in which were placed stakes, 4 inches square, of varying length, to keep the lumber from falling off. In unloading the car these stakes were taken out and thrown anywhere on the dock.

In the forenoon of March 3, 1910, Olof Nilsson, plaintiff's intestate, at work for defendant, and one Fosli were directed by the foreman to leave the work they were then doing on top of the dock, and go down upon the ice to pick up the spikes and bolts which had come out of the decayed planks and timber as it was torn down. These bolts and spikes were scattered over the ice along the dock. These two men went to work as directed. After working for half an hour

or more Fosli heard a noise as if something had struck the ice. He was then working with his back towards Nilsson and talking to the latter. Not getting an answer to a question he looked around and discovered Nilsson lying between two timbers. He was irrational, and bleeding from one ear. Death resulted in a few hours. Four or six feet from the place where Nilsson lay was one of these car stakes which Fosli thought was the same stake which he, just before being sent down on the ice, had noticed lying across the bull rail almost directly over the place of accident. Fosli helped carry Nilsson to the office, some few hundred feet away, and then returned to the top of the dock, at which time the stake he had seen on the bull rail was gone.

Among the negligent acts and omissions charged against defendant was suffering the stake mentioned to lie at the edge of the dock, where it could easily be dislodged, and sending deceased down to work underneath exposed to the dangers therefrom; that such danger was known to defendant but unknown to deceased. It is also alleged that the undertaking in which defendant was engaged was of such dangerous character that care required the adoption of a system or method to prevent matters to fall on those required to work below. Failure to provide a reasonably safe place wherein decedent was required to work is also alleged as a ground for recovery.

The jury found that Nilsson's death was occasioned by defendant's negligence. Defendant's motion for a directed verdict at the trial, as well as its subsequent motion for judgment *non obstante veredicto,* being denied, judgment was entered for plaintiff and from such judgment defendant appeals. Therefore the sole question to be determined is whether there is any evidence reasonably supporting the cause of action stated in the complaint.

In the oral argument considerable stress was laid on the proposition that the evidence fails to point out the instrumentality which inflicted the mortal wound or how it was received. We are clear that circumstantial evidence furnishes a substantial basis for the conclusion that the car stake found near the place where plaintiff's decedent was first discovered fell from the bull rail above, struck him on the head, and in that manner his death was caused.

. In the brief appellant contends for the reversal of the judgment because of total lack of evidence to establish these four facts or propositions which, in its estimation, are indispensable to a recovery herein: "(1) Who placed the timber (stake) on the bull rail? (2) How long it was there before seen by Fosli. (3) The master's knowledge of its being there. (4) What caused it to fall?" As to the first and fourth propositions it must be conceded that there is no testimony as to who placed the stake on the bull rail, and that the precise cause of its fall is left uncertain. But we do not deem it vital to a recovery that the evidence point out the one who placed the stake on the rail, nor the exact cause of its fall. If it was negligence to suffer the stake to remain in such a position that, through the work there conducted, it might readily be dislodged and fall upon Nilsson who had been sent down on the ice to work, it seems to us immaterial how it came to be placed there or what made it fall.

Here many persons were working together, but at various things, some of the men being frequently shifted about by the master from one kind and place of work to another. Nearly all the work was done from the top of a high structure, some men worked in pairs or in fours unloading and moving planks and timber, sawing, nailing and bolting the same. In this situation it must be apparent that, if any men were sent down on the ice to work, they would be in great danger of being hurt, unless care was exercised in the work above. It appears from the evidence that the work on the ice was of a temporary character. No precaution was taken to inform the men working above that Nilsson had been sent down. We apprehend that it was for the jury to say whether or not, in ordering Nilsson down to pick up bolts, defendant was negligent in the matter of providing him a reasonably safe place to work under the conditions existing, and also, considering the situation, what precaution reasonable prudence required the defendant to take to protect Nilsson while doing the work in the place to which he had been sent.

The stake which the jury might well have found to be the instrumentality of Nilsson's death, they would also be warranted in finding to be the one which Fosli saw lying across the bull rail at least half an hour before and at the time Nilsson was ordered down on the ice.

We think it was a question of fact whether the foreman was not charged with the master's nondelegable duty of seeing to it that the employees were furnished a reasonably safe place wherein to work. Lindgren v. William Bros. Boiler Mnfg. Co. 112 Minn. 186, 127 N. W. 626; Borgerson v. Cook Stone Co. 91 Minn. 91, 97 N. W. 734. This foreman was not produced at the trial and it cannot be assumed on this record that he was ignorant of the actual situation. The contrary seems the more reasonable assumption. He was there on top of the dock when the order to Nilsson was given and was in full charge of the work. He had the right to, and did, set the men to work in any place he saw fit. The jury might well say that upon him devolved the duty of using ordinary care to ascertain that matters, like this stake, which would be apt to fall and cause injury, were removed before the men were sent down upon the ice to work, and that while they were down the same care should be taken to keep them reasonably protected from like hazards. If negligence in the discharge of this duty was found, the conclusion would be justified that such negligence was in law the proximate cause of Nilsson's death. In such an event the act of the one who placed the stake on the bull rail and of the one who caused it to fall become merely concurrent causes which would not relieve defendant. There is nothing in the record tending to show that any one intentionally threw the stake down, and, from its position on the bull rail, the reasonable inference is that it was dislodged either by the jarring incident to the work, or by being accidentally hit in the handling of tools or materials, or by the unintentional brushing against of some one passing by. It is immaterial which. The testimony that the stake was in a position likely to injure those below for at least half an hour before Nilsson was hit was sufficient to take the question to the jury whether the master's representative, the foreman, who was near by on the top of the dock, in the exercise of proper care should have discovered and removed it, thus avoiding Nilsson's injuries. Bearing on the master's absolute duty to use ordinary care that the place wherein the servant is directed to work be kept reasonably safe, we may cite the following cases involving situations somewhat similar to the facts herein: Foley v. Hoy, 113 Minn. 186, 129 N. W. 215; Richardson v. City of Spokane, 67

Wash. 621, 122 Pac. 330; Virginia Iron etc. Co. v. Hamilton, 107 Tenn. 705, 65 S. W. 401; Pioneer F. C. Co. v. Howell, 189 Ill. 123, 59 N. E. 535. The case of Brennan v. Butler Bros. 107 Minn. 430, 120 N. W. 540, turned upon the proposition that it was so unlikely that a board could escape and fall from the place where it was claimed that it came that the master could not well be held to have anticipated injury therefrom.

An attentive examination of the record fails to disclose any good reason for reversing the judgment. Defendant was not entitled to directed verdict and is not entitled to judgment in its favor.

Judgment affirmed.