## HAROLD J. SANDVIK v. HAROLD M. JAMMES.

160 N. W. (2d) 700.

July 26, 1968—No. 40,681.

86

*Carroll, Cronan, Roth & Austin* and *Edward R. Soshnik,* for appellant.
*Pierro, Johnson & Pieri* and *Richard W. Johnson,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

Appeal from an order of the District Court of Hennepin County denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

Plaintiff, Harold J. Sandvik, brought suit against defendant, Harold M. Jammes, to recover damages for injuries allegedly resulting from defendant's negligence. The jury returned a verdict of $10,000 in plaintiff's favor.

Taking, as we must, the view of the evidence most favorable to the verdict, the facts appear to be as follows: On February 11, 1963, plain-

tiff, at defendant's request, undertook to assist defendant in moving a 21-foot, 500-pound freezer from the first floor of defendant's home to the basement. The freezer was strapped to a two-wheel dolly to facilitate its being lowered down the basement steps, one step at a time. Defendant then positioned himself underneath the freezer so as to be in a position to exert his force upward against the downward direction of the freezer. Plaintiff was placed at the upper end of the freezer so that he could hold onto the handles of the dolly and lean back against the downward pull of the freezer at the proper time. After the freezer was lowered one step, plaintiff would lean back and hold the freezer stationary while defendant moved down another step. Defendant would then lean against the freezer to keep it from rolling forward while plaintiff stepped down one step.

The testimony indicates that plaintiff and defendant had worked out this procedure before starting to take the freezer down the stairs to the basement. It worked satisfactorily about two-thirds of the way down the stairs. At that point, plaintiff testified, he held the freezer until defendant could position himself on the next step and then asked defendant if he had control of the freezer, to which defendant replied, "Got it, okay." Plaintiff moved one foot onto the step below. Before he got his other foot on the step, the freezer and dolly slipped forward and downward. Defendant said, "Oops, look out." Plaintiff, comprehending the danger to defendant, immediately made extreme exertion to hold back the dolly, and threw his weight back and to the left, attempting to get some support from open studding on the side of the stairway. While in this bent-over position, he felt a snap in his back, but held onto the dolly as hard as he could and warned defendant to look out. Plaintiff's back was thus injured as a result of the extreme exertion he made in attempting to control the descent of the heavy freezer after it had moved suddenly and unexpectedly at a time when defendant was supposed to be holding it in place. As they completed the job of moving the freezer to the basement, plaintiff felt a numb pain in his back. The pain daily grew progressively worse until finally it became necessary for plaintiff to be hospitalized and later to undergo back surgery.

Plaintiff and his wife described the conversation later that evening in

which defendant and his wife expressed concern in regard to plaintiff's injury. Plaintiff's wife testified that in the conversation between the couples following the incident, plaintiff said that "he had heard a crack and that he had a dull pain" and that defendant felt bad about it. Defendant, however, testified that he could recall nothing unusual in moving the freezer down the stairs and that both he and plaintiff talked about having sore backs. Defendant's wife did not testify at the trial and her absence was not explained.

Plaintiff's testimony showed that after defendant had stated that he was holding the freezer he allowed it to slip forward off the step on which it was resting. Plaintiff was exerting no force on the freezer when it suddenly moved forward. He did nothing at that time to cause the freezer to move. Defendant also testified specifically that it was his duty at that time to keep the appliance from moving forward. He further testified that the procedure in moving the appliance down the steps was correctly described by plaintiff.

■ Defendant contends that plaintiff assumed the risk of injury as a matter of law. Upon the record here that defense was an issue for the jury to determine. Ahlstrom v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 1, 68 N. W.' (2d) 873.

■■ The gist of this action is negligence, and the burden was upon plaintiff to prove facts from which it could fairly be inferred that defendant's negligence was the proximate cause of the injury. Defendant contends that plaintiff did not sustain this burden and that the trial court erred in not directing a verdict for defendant.

Thus, the main question on this appeal appears to be whether the facts support the verdict. Analyzing the testimony herein, it appears quite clear not only that the parties agreed to perform specific duties but that their conduct in moving the appliance two-thirds of the way down the steps in conformity with the agreed plan showed a course of conduct which both parties were entitled to assume would continue.

Restatement, Torts (2d) § 295A, comment *b*, states:

"* * * [E]vidence of the past practices of the parties to the action in dealing with each other is admissible, and relevant, as indicating an

understood standard of conduct, *or the reasonable expectation of each party as to what the other will do."* (Italics supplied.)

The evidence when analyzed, we think, definitely established, in view of the agreed-upon procedure and the parties' conduct in carrying it out, that defendant breached the duty of care which he owed to plaintiff under the circumstances. When it was defendant's duty to hold the appliance on the steps so it would not slip forward, he allowed it to slip forward, thereby exposing himself to an extreme danger which, in fact, brought about the emergency reaction from plaintiff. We think also that the reaction and the injury which followed were reasonably foreseeable consequences of defendant's conduct. The trial court took this view of the evidence, stating in the memorandum incorporated in the order denying defendant's post-trial motion:

"The jury could reasonably and almost of necessity infer that Jammes [defendant] had not followed the rules which he had agreed upon for their mutual safety and which Sandvik [plaintiff] relied upon and that his failure constituted negligence—causing Plaintiff's alleged injury."

We think the facts and circumstances herein shown were sufficient to justify the jury's finding that defendant was negligent when he permitted the appliance to slip forward at a time when he was responsible for holding it in place. Cullen v. Pearson, 191 Minn. 136, 253 N. W. 117, 254 N. W. 631; Nilsson v. Barnett & Record Co. 123 Minn. 308, 143 N. W. 789; Wank v. John T. Clark & Son (2 Cir.) 199 F. (2d) 483; Fitzgerald v. Armour & Co. 129 Minn. 81, 151 N. W. 539; Rosenfield v. Arrol, 44 Minn. 395, 46 N. W. 768.

Evidence to establish negligence need not be direct and positive, since the fact of negligence in any given case is susceptible of proof by evidence of circumstances bearing more or less directly upon the facts. Plaintiff was not bound to prove more than enough to raise a fair presumption of negligence on the part of defendant and a causal connection between that negligence and his own injury. Having done this, he was entitled to recover unless defendant produced evidence sufficient to rebut that presumption. Rosenfield v. Arrol, *supra.*

It is true, as contended in defendant's brief, that no one was present

when the accident occurred except plaintiff and defendant and that therefore no other witness could testify directly to what occurred. As we have pointed out, however, it was not necessary that the cause of the accident be proved by direct evidence.

Admittedly the proof must furnish more than a basis for speculation or conjecture. It must do more than show a possibility of injury from the condition complained of, but here it does establish a reasonable probability that the alleged cause produced the effect; that is, that it furnished a reasonable basis for the inference that defendant's conduct was the cause of the accident. Fitzgerald v. Armour & Co. *supra.* However, as we said in Lindgren v. Voge, 260 Minn. 262, 269, 109 N. W. (2d) 754, 759, 88 A. L. R. (2d) 1080:

"It was not incumbent upon the plaintiffs to show by direct evidence the exact manner and cause of the injury; this may appear from the circumstances of the case. It is well established that the plaintiff in a civil action is not required to prove his case beyond a doubt and that all that plaintiffs are required to do is make it appear to be more probable that the injury came in whole or in part from the defendant's negligence than from any other cause. Neither is the law so exacting as to require every fact and circumstance going to make up a case of negligence, or to identify the proximate cause, to be proved by eyewitnesses or positive, direct testimony."

■ In Johnson v. Evanski, 221 Minn. 323, 327, 22 N. W. (2d) 213, 215, this court declared:

"Taking, as we must, the view of the evidence most favorable to the verdict, a motion for a judgment notwithstanding, whether based on negligence or on contributory negligence, should be denied unless the evidence in support of the verdict, and all reasonable inferences to be drawn therefrom, be so wholly incredible and unworthy of belief or so conclusively overcome by other uncontradicted evidence that the want of negligence or the presence of contributory negligence is so clear as to leave no room for an honest difference of opinion among reasonable men. Goldfine v. Johnson, 208 Minn. 449, 294 N. W. 459; Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327."

It has often been stated by this court that where there is no reasonable chance for deriving different conclusions from the facts the question of negligence is for the court. Where the facts are such that fair-minded men of ordinary intelligence may differ as to the inferences to be drawn therefrom, the question of negligence is for the jury. It thus follows that ordinarily it is only where there is an entire absence of evidence tending to establish negligence that a court can enter upon the province of a jury. Emery v. Minneapolis Industrial Exposition, 56 Minn. 460, 57 N. W. 1132.

Affirmed.