# MARION AND GEORGE PENNY v. SEARS ROEBUCK & COMPANY AND ANOTHER.[1]

December 14, 1934.

No. 30,049.

*Cox, Weeks & Kuhlman,* for appellants.

*Cobb, Hoke, Benson, Krause & Faegre, Bradshaw Mintener,* and *Nathan A. Cobb,* for respondents.

HOLT, JUSTICE.

Plaintiffs appeal from the orders denying their separate motions for a new trial.

Marion Penny, the wife of George Penny, in the forenoon of May 14, 1932, while shopping in the store conducted by defendants in

[1]Reported in 258 N. W. 522.

the city of Minneapolis, injured the ligaments of her right foot. She sued defendants, alleging that defendant Sears Roebuck & Company owned the store and it was its duty, in conjunction with various lessees, to keep and maintain the aisles therein in a clean and safe condition for invitees, and that the defendant Kroger Grocery Company, which as lessee was engaged in the retail vegetable business in part of the store, was in duty bound to keep the aisles about the department occupied by it in a clean and safe condition for the public invited to trade; that as she passed the portion maintained by the last mentioned defendant she "slipped upon one or more green string beans, which had been carelessly and negligently thrown and allowed to remain upon said aisle by defendants, and each of them," causing the injury mentioned. The husband sued for consequential damages. The two actions were tried together. When plaintiffs rested, defendants rested also and moved for directed verdicts. Their motions were granted.

The assignments of error are directed solely to the proposition that the evidence of plaintiffs made defendants' alleged negligence an issue for the jury. Plaintiff's own testimony did not make a case. It was to the effect that as she was walking along the vegetable counter she suddenly slipped on her heel, and the ankle bent, causing intense pain. She grabbed onto a part of the counter, and, picking up the right foot with her left hand, she "found a couple of green string beans adhered to the heel"; she looked down, and "there were several other beans on the floor and a couple of pieces of lettuce." There was nothing to show how these bean pods and pieces of lettuce came to be on the floor. For all that appears they may have fallen when she grabbed the counter to prevent herself from falling. Her husband was walking a few steps ahead of her when she slipped. His testimony added nothing to hers except this, that as he sat there while a nurse attended to his wife he noticed peas there and stated: "They must have been knocked off by people going by, or something like that, because I didn't see how much of that stuff could be laying on the floor." He also said they came and swept it up, and it made about half a dustpan. Plaintiffs also called the night janitor, who testified that

floors were thoroughly swept every night. Two young persons who were clerks in the grocery department at the time were witnesses for plaintiffs. Neither couldt tell as to conditions on the day in question, but they testified that the help would be at the store about an hour before the store opened for business to receive the vegetables, fruits, etc. and place them in trays on the counters, ready for sale; that the trays were four inches deep; that such foods as fresh peas, string beans, lettuce, etc. would be piled higher in the center of the tray, and the trays would stand at an angle of 25 degrees on the counter; that after they were through with placing the merchandise on the counters the aisles were cleaned before the store was opened to the public at nine o'clock; that people passing along the counters would sometimes brush against these trays and knock off some of the contents onto the floor; that the clerks had strict orders to sweep up if anything fell on the floor, and they did so.

Plaintiffs also called the manager of the grocery department. His testimony was positive that on the morning in question, as well as on all other mornings, the aisles were cleaned up before the store was opened for business, and that he was around all the time. The testimony recited shows that extraordinary care was taken to keep the floors and aisles clean; that the clerks were directed to keep them so; that they did comply with such directions; and that the manager was always there and saw to it that it was done. In handling such goods as peas and beans in the pod, loose lettuce, and spinach, whether by clerks in taking from the trays, weighing, and doing up in packages, or by customers in examining the merchandise, or by someone jostling against the trays on the counters, a stray pod or leaf is almost certain to drop to the floor at times. A storekeeper cannot guard against accidental falling on the floor of such things as a lettuce leaf or a bean pod. The jury certainly would not be justified in finding that there was a failure to use ordinary care in keeping the floor clean and safe for the public.

In the brief of plaintiffs it is intimated that wire guards should have been provided so that nothing could have been brushed off or fallen from the trays onto the floor. No such issue was made by the pleading; the only allegation of negligence in the complaint is

this, that as plaintiff, a customer in the defendant's store, was walking in one of the aisles maintained by defendant Kroger Grocery Company, she "slipped upon one or more green string beans, which had been carelessly and negligently thrown and allowed to remain upon said aisle by defendants, and each of them." It is clear that this does not charge negligence of the grocery company in respect to the manner of exhibiting its merchandise in any particular tray or bin, or negligence in placing the produce upon the tray, or in the position of the tray.

Defendants were not insurers of the safety of the premises. Plaintiff showed definitely by the manager of the grocery company the falsity of the allegation that the one or more string beans on which she slipped had negligently been allowed to remain on the floors. If these were thrown there, their presence had not remained long enough to charge the grocery company with negligence for failure to discover and remove them. All the testimony is that the aisle was well lighted. Mr. Penny walked a few steps ahead of his wife. He neither saw nor slipped on any bean pods.

Plaintiffs cite as supporting their right to go to the jury Williamson v. Hardy, 47 Cal. App. 377, 190 P. 646 (to this we add McClurken v. Rolph's Grocery Co. 130 Cal. App. 529, 20 P. (2d) 66); Kalb v. Fisher, 5 N. J. Misc. 977, 139 A. 237, affirmed in 105 N. J. L. 491, 144 A. 919; Markman v. Fred P. Bell Stores Co. 285 Pa. 378, 132 A. 178, 43 A. L. R. 862. The two California decisions support plaintiffs to this extent that if they had stopped with the proof that Mrs. Penny slipped on something upon the floor and wrenched her foot it would have made a case for the jury. Other courts hold that not enough from which to infer negligence. However that may be, in the instant case plaintiffs went further, showing the care taken by defendants to keep the floor free from matters that by chance drop thereon. As to the Kalb case, it is enough to refer to the later case in the same court of Bader v. Great A. & P. Tea Co. 112 N. J. L. 241, 169 A. 687, where it was said:

"Testimony showing the habitual presence of refuse upon the floor of the store would be admissible [citing the Kalb case]. But

mere isolated incidents of vegetable refuse upon a food store floor seems to us probative of nothing. There was no testimony on behalf of the plaintiff as to the length of time the piece of vegetable matter upon which plaintiff alleges she slipped was permitted to remain on the floor."

· The Markman opinion is explained in the case of Gorman v. Simon Brahm's Sons, Inc. 298 Pa. 142, 145, 148 A. 40, 41, where the court said:

"Markman v. Bell Stores Co. 285 Pa. 378, supra, went to the jury because there was evidence that the presence of refuse matter, where the plaintiff fell, was not a chance occurrence but a repeated condition so frequent that defendant's attention was drawn to it many times, and on one occasion the police department was notified of it."

Defendants rely in part on these authorities, which in our opinion support them: John Thompson Grocery Co. v. Phillips, 22 Colo. App. 428, 125 P. 563; Norton v. Hudner, 213 Mass. 257, 100 N. E. 546, 44 L.R.A.(N.S.) 79; Bader v. Great A. & P. Tea Co. 112 N. J. L. 241, 169 A. 687; DeVelin v. Swanson (R. I.) 72 A. 388; Gorman v. Simon Brahm's Sons, Inc. 298 Pa. 142, 148 A. 40. In Hastings v. F. W. Woolworth Co. Inc. 189 Minn. 523, 250 N. W. 362, it was held that the evidence of a hole in the floor of the store large enough for the heel of a woman's shoe to slip into was sufficient to sustain a charge of negligence against the owner of the store; but with reference to the charge of negligence because of the presence on the alleged slippery floor of a waxy paper, it was said [189 Minn. 525]:

"On the present record it cannot be said that the presence of the paper or the slipperiness of the floor was ascribable to the negligence of the defendant."

So in this case with respect to the chance presence of the bean pods which caused the accident to Mrs. Penny.

The orders are affirmed.

DEVANEY, CHIEF JUSTICE (dissenting).

I cannot agree. In my opinion the question of whether defendants were negligent in maintaining the type of counters here used is properly in issue under the pleadings of this case. The allegation of negligence in the complaint is very general and such, it seems to me, as would permit a showing of defendants' neglect, if that it was, in employing the hereinafter mentioned means of displaying merchandise. The complaint alleges that plaintiff slipped on matter "which had been carelessly and negligently thrown and allowed to remain" upon the floor. Obviously, "thrown" means cast or allowed to fall on the floor. I believe that it should be so construed and that the issue was within the pleadings.

The counters here used were topped with trays about four inches deep. These trays stood at an angle of 25 degrees. They were next to the aisles, which were about four feet wide. There were no guards on these trays to prevent vegetables from sliding off or from being knocked onto the floor. There is testimony to the effect that very often these trays were piled up high in the center with such foodstuffs as string beans, lettuce, green peas, etc. An employe testified that very frequently beans or peas were knocked on the floor into the aisles by persons passing by and that persons other than this plaintiff had been seen to slip on foodstuffs which had fallen onto the floor. The very fact that defendants instructed the employes immediately to sweep up things that fell on the floor admits of the fact that defendants knew that from time to time vegetables and other matter fell upon the floor and created a hazard to persons walking in the aisle. Hence it well could be found that defendants knew or should have known that the counters and trays were dangerously placed and that as a result injury might befall someone, as it did in this case.

I believe that there should be a reversal, that the issue here outlined is properly within the pleadings, and that the question of whether defendants used reasonable care in regard to the use of this type of counters is fairly and properly for the jury. A directed verdict for defendant is given only in the clearest of cases. This is not such a case.