MARY FLYNN AND ANOTHER v. ARCADE INVESTMENT COMPANY.

91 N. W. (2d) 113.

June 27, 1958—No. 37,428.

108

*B. Warren Hart* and *Faricy, Moore & Costello,* for appellants.
*Tyrrell, Jardine, Logan & O'Brien,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Actions for personal injuries by Mary Flynn and for resulting special damages by her husband, P. J. Flynn, occasioned when Mrs. Flynn fell on a step on the sixth floor of the Lowry Medical Arts Building in St. Paul owned by defendant. At the close of the testimony the court directed verdicts for defendant in both actions. This is an appeal from a subsequent order denying plaintiffs' motion for a new trial.

In directing the verdicts the trial court stated:

"* * * The building [owner] is only bound to exercise ordinary or reasonable care to keep the place in reasonably safe condition. There was no doubt here but that these steps were satisfactory, and there is no question here that there was no negligence or failure to use ordinary care on the part of the building.

"Then we come to the question of * * * contributory negligence * * *. It appears to the Court on that angle, too, that unfortunate as it may be, that she [Mary Flynn] did not use ordinary care.

"She went into the place; she unlocked the door; she used the facilities; and then she came out; and apparently she forgot what she had seen on the way in; and she fell."

On appeal plaintiffs contend that the evidence would support a finding (1) that defendant was negligent in maintaining an abrupt and hidden change of floor levels in a building used and held out to the public as a safe and suitable place of treatment for the aged, the infirm, persons of poor eyesight, and those otherwise handicapped, and in maintaining a step therein which, because of its location, color, and design, was dangerous to persons using it; and (2) that plaintiff Mary Flynn was free from negligence when she accidentally fell on the step described.

Mrs. Flynn testified that on March 5, 1956, she was of the age of 81 years and had visited the sixth floor of defendant's building to consult with Dr. Bernard O'Reilly with reference to procuring eyeglasses to permit her to read newspapers and telephone directories with more ease; that after he had examined her she had obtained from his receptionist the door key to the lavatory located on the same floor; that she had then unlocked the door, entered, and remained therein for two or three minutes; and that she had then reopened the lavatory door (which opened inward), preparatory to leaving.

With reference to her exit from the lavatory, she testified as follows:

"Q. * * * at that time did you see the step?

"A. Well, I don't know. I must have seen it, but it all looked the same. * * *

* * * * *

"Q. * * * Were you aware that the step was there?

"A. Yes, I was aware there was a step there someplace * * *.

* * * * *

"Q. * * * when you stepped out of the door, what happened?

"A. Well, I stepped into space * * * and I fell down."

She testified further that in going into the lavatory she had had no difficulty in seeing the step; that, after she had pulled the door toward her to leave, it required a couple of steps before she came to the step; that the lavatory was well lighted and plainly revealed the lavatory floor; and that, although she had not visited this lavatory prior to the accident, she had entered those on other floors of the building with steps identical to the one here involved.

It is undisputed that there were no handrails on the step and no warning signs or notices calling attention to it. Mrs. Flynn testified that "it all looked the same," but the record indicates that the lavatory floor was tan with a red styled design, the step light grey marble, and the corridor floor spotted grey with dark borders around each square therein.

■ We have held that, where a claim of negligence in the maintenance of a structure is based only upon an abrupt change of floor levels therein, there is not sufficient evidence to require submission of the issue to a jury, Albachten v. The Golden Rule, 135 Minn. 381, 160 N. W. 1012; but that, where there is evidence of distracting circumstances or faulty design, location, or construction, a fact question on this issue may be presented. Eklund v. Kapetas, 216 Minn. 79, 11 N. W. (2d) 805. Thus, it has been held that an abrupt change of floor levels without warning signs to disclose the obscure location thereof, or without a change in color pattern, Wood v. Prudential Ins. Co. 212 Minn. 551, 4 N. W. (2d) 617; or without adequate illumination, Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213; or in a location where an invitee's attention is diverted to other things, Lincoln v. Cambridge-Radisson Co. 235 Minn. 20, 49 N. W. (2d) 1, established negligence on the part of the building owner.

Here, the evidence discloses that there was adequate light, and since plaintiff admitted she was aware of the presence of the step and saw it before she stepped forward, it cannot be said that the failure to provide warning signs was a proximate cause of her fall. As to the absence of handrails, our decisions hold that this factor is not proof of negligence in the maintenance or construction of steps unless the failure to provide them constitutes a violation of an ordinance or statute, or unless such steps are so constructed or maintained that they may be regarded as dangerous to persons using them. Judd v. Landin, 211 Minn. 465, 1 N. W. (2d) 861; Walimaa v. Maki, 163 Minn. 352, 204 N. W. 25, 41 A. L. R. 965; Vosbeck v. Lerdall, 245 Minn. 164, 72 N. W. (2d) 371; Jeske v. George R. Wolff Holding Co. 250 Minn. 16, 83 N. W. (2d) 729.

■ Assuming without deciding here that the color pattern provided by defendant for the change in floor levels was of itself sufficient to

create a fact question on the issue of negligence, we cannot escape the conclusion that plaintiff is nevertheless barred from recovery by virtue of her own contributory negligence. She was bound to exercise due care for her own safety. She cannot be excused for her failure to see something that was in plain sight and of which she was aware because of her frequent use of similar steps on the premises, and because of her use of this particular step but a few minutes before. Defendant was not an insurer of her safety, and no obligation rested upon it to protect her from known hazards or from hazards apparent to her upon ordinary observation. Johnson v. Evanski, *supra;* Guy v. Western Newspaper Union, 236 Minn. 20, 55 N. W. (2d) 298. While there is evidence that she had sought eyeglasses to aid her vision in reading fine print, there is nothing to indicate that her eyesight was defective as to ordinary objects within the normal range of her vision. She had no difficulty in opening the door above the step and stepping up to gain entrance to the lavatory. The door opened inwardly, and the lavatory was adequately lighted so that she had ample opportunity to observe the step while walking toward it. Further, since the corridor floor was substantially darker than that of the lavatory and lavatory step, there was a clear indication that somewhere she must step down to reach it. It must follow as a matter of law that her conduct was a proximate contributing cause of her injuries and bars her recovery therefor.

The order appealed from is affirmed.

Affirmed.