ALICE NORMAN AND ANOTHER v. TRADEHOME SHOE
STORES, INC.

132 N. W. (2d) 745.

January 8, 1965—No. 39,337.

*Berryman, Fisher & Johnson, Mayer Shapiro,* and *Richard A. Grayson,* for appellants.
*Spence, Baglio & Buckley,* for respondent.

NELSON, JUSTICE.
These actions were for personal injuries sustained by plaintiff Alice

Norman in a fall in defendant's store and for consequential damages sustained by her husband, plaintiff Paul Norman. The cases were consolidated for trial.

At the close of plaintiffs' testimony concerning liability, they and defendant rested provisionally and by a blended motion defendant moved for a directed verdict or dismissal on the grounds that plaintiffs had failed to prove any actionable negligence on its part. The trial court granted the motion for a directed verdict, ruling that plaintiffs had failed to sustain the burden of proving liability. Plaintiffs appeal from a subsequent order denying their motion for new trials.

Mrs. Norman, referred to hereafter as plaintiff, entered defendant's shoe store on the afternoon of March 31, 1961, while shopping at the Hamline Shopping Center in the village of Roseville. She was accompanied by her daughter, Pauline Richardson, and other members of her immediate family. She claims that when she was about 10 to 15 feet inside the entrance to defendant's store and was walking toward a counter displaying shoes, her right heel slipped, causing her to fall on the tile floor. She did not notice anything unusual about the floor, her eyes being fixed upon the counter when the fall occurred. Following the fall, she at once noticed next to her right foot a piece of tissue paper about 8 inches in length and tapering from 3 or 4 inches in width on one end to about 2 inches on the other; that the paper appeared to have been torn, was rather jagged on one side, dirty, and looked as if it had been walked upon. Defendant's objection to her statement that it looked as though it had been walked on was sustained, and the jury was instructed to disregard it.

The tissue paper was not preserved. In describing it Mrs. Norman testified that the paper "was not slightly dirty and it was not real dirty. It was right in between," and that it was "gray-black." Under cross-examination she said that only part of it was dirty and that there were marks on about half of it. Defense counsel pressed her to describe the marks, but she refused to do so and continued to assert that it looked as though it had been walked on.

It is not possible to determine from the record precisely the type of shoes plaintiff was wearing, though she stated that they had a rather

small leather heel and that she had worn them over a period of about 2 months, but not a great deal. She had been in defendant's store on several occasions prior to the accident. She stated that the floor was tile and that she had never really noticed whether it was kept clean, although she indicated that she would have noticed and recalled it if there had been papers or dirt on the floor. She said that the store was well lighted. On cross-examination she testified as follows:

"Q.   I believe you said you walked in about fifteen feet when your foot slipped out from under you. As you walked in did you see anything on the floor?

"A.   I was not looking at the floor. I was looking at this counter here where the shoes were.

"Q..   The fact of the matter is, Mrs. Norman, you don't know what caused your foot to slip, do you?

"A.   I know it was something slippery.

"Q.   But, you don't know what it was?

"A.   It was something.

"Q.   But, whether it was a piece of paper you don't know?

"A.   Well, I figured it was when I saw the paper laying by my shoe.

"Q.   That is something you saw as you were sitting on the floor. Do you know what caused your foot to slip as you walked—

"A.   Whatever it was it was slippery."

Counsel for the parties stipulated that if plaintiff's son, Patrick Norman, were called, he would testify that he had gone to the store after the accident; that he had seen the paper on which his mother claimed she had slipped; that it was whitish-cream tissue paper which had the appearance of an oily finish and had several black and brown smudge marks upon it; that he would draw the appearance of these smudge marks for the benefit of the jury; and that these would be of a circular or oval shape.

Plaintiffs make the following assignments of error: (1) That the court erred as a matter of law in granting the motions for directed verdicts in favor of the defendant on the ground that plaintiffs failed to prove constructive notice; and (2) the court erred as a matter of law

in excluding the testimony of plaintiffs' witnesses that a foreign substance had footprints on it. They claim that the following cases are controlling and decisive of the issues on this appeal: Messner v. Red Owl Stores, Inc. 238 Minn. 411, 57 N. W. (2d) 659, as to constructive notice of a foreign substance; and Patterson v. Blatti, 133 Minn. 23, 157 N. W. 717, L. R. A. 1916E, 896, as to description of footprints of a foreign substance.

The duty of a shopkeeper or merchant to his customers in his store or place of business is well settled. In Ober v. The Golden Rule, 146 Minn. 347, 178 N. W. 586, the rule is stated by Commissioner Lees as follows: ·

"A shopkeeper is under legal obligation to keep and maintain his premises in a reasonably safe condition for use as to all whom he expressly or impliedly invites to enter the premises."

However, this does not mean that the merchant is an insurer of the safety of his premises. He owes his customers ordinary care in respect to them. Although they are not parallel in their facts to this case, we call attention to the following cases as of illustrative value: Hastings v. F. W. Woolworth Co. Inc. 189 Minn. 523, 250 N. W. 362; Corrigan v. Elsinger, 81 Minn. 42, 83 N. W. 492; Albachten v. The Golden Rule, 135 Minn. 381, 160 N. W. 1012; Duffy v. Stratton, 169 Minn. 136, 210 N. W. 866.

In Messner v. Red Owl Stores, Inc. *supra,* plaintiff fell and was injured while shopping in a self-service grocery store operated by defendant. Her fall occurred in front of the meat counter which was located toward the front of the store. There was a fruit and produce department on the same side but further toward the rear. In an action against defendant to recover damages for her injuries, plaintiff alleged that she slipped on a banana peel which had been negligently placed or permitted to remain on the floor by the store employees. One employee testified at the trial that she heard plaintiff fall and ran to the spot to see what had happened; that she picked up "a few" banana peels which were strewn about the floor; and that the banana peels were "kind of shriveled up and dark brown." With the exception of some hearsay testimony, received without objection, to the effect that plaintiff had

slipped on a banana peel, this was the only evidence relating to the banana peels. The jury returned a verdict in plaintiff's favor, but upon motion of defendant the trial court granted judgment notwithstanding the verdict on the ground that the court should have directed a verdict for defendant at the close of the evidence because the evidence as a matter of law failed to show that plaintiff's injuries were caused by defendant's negligence. Judgment was entered pursuant to the court's order and plaintiff appealed therefrom. We held that unless the dangerous condition resulted from acts of the defendant's employees, defendant would be negligent only if its employees failed to rectify the condition after they knew, or in the exercise of reasonable care should have known, that the condition existed, citing Hubbard v. Montgomery Ward & Co. Inc. 221 Minn. 133, 21 N. W. (2d) 229. In discussing the effect of the evidence in the Messner case, this court said (238 Minn. 413, 57 N. W. [2d] 661):

"There was no direct evidence as to how the banana peels came to be on the floor, and there was nothing to indicate that the floor was not otherwise clean at the time and place plaintiff fell. From the number, condition, and location of the banana peels, plaintiff argues that it is more probable that the banana peels came to be on the floor through the act of defendant's agents than through other means. We cannot agree. There was no evidence that defendant even sold or handled bananas in its store during the time in question. Under the evidence submitted, a finding that defendant's employes deposited the banana peels on the floor, in our opinion, would be too speculative and conjectural to be sustained.

"There was no evidence whatever that any of defendant's employees had actual knowledge of the presence of the banana peels on the floor. Plaintiff argues, however, that the fact that the banana peels were 'kind of shriveled up and dark brown' permits an inference that they must have remained on the floor long enough to charge defendant with constructive notice of their presence. This court has never considered this precise question. Although plaintiff has cited cases from other jurisdictions which support the proposition that the damaged condition of a banana peel or other similar item of fruit may be the basis for

finding the length of time it has remained on a floor, no cases have been found which uphold a finding of constructive notice on so slight evidence of condition as the statement in the instant case that the banana peels were 'kind of shriveled up and dark brown.' "

We held that plaintiff had the burden of proving either that defendant caused the dangerous condition or that it knew or should have known that the condition existed. We also held that the evidence submitted, even when viewed in the light most favorable to the plaintiff, failed to sustain that burden, and affirmed the trial court's granting of judgment notwithstanding the verdict.

In Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213, plaintiff was injured in attempting to enter defendant's store. We held that in order to charge defendant with negligence, a breach of his duty to keep the premises reasonably safe for plaintiff must appear and that such breach of duty is not proved by the mere occurrence of an accident. We said that negligence must be predicated on what should have been reasonably anticipated and not merely on what happened, and that the store owner's duty to keep premises reasonably safe for customers is to guard, not against all possible consequences, but only against those which are reasonably to be anticipated in the normal course of events.

In Preston v. Safeway Stores (D. D. C.) 163 F. Supp. 749, the action was brought by a customer of a grocery store against its owner to recover damages for personal injuries resulting from a fall due to slipping on a tiny piece of onion lying on the store floor. At the trial the plaintiff contended that the inference might properly be drawn from the testimony that a store employee in sweeping the floor 5 or 10 minutes before the accident had overlooked or neglected to sweep up the piece of onion. The case was submitted to a jury which returned a verdict for plaintiff. The court, in denying a motion for judgment notwithstanding or a new trial, stated that a shopkeeper is not an insurer or guarantor of the safety of his customers but, since he impliedly invites them to enter for the purpose of transacting business, is under a duty to exercise reasonable care for their protection; that failure to exercise reasonable care constitutes negligence; and that if such negligence is

the proximate cause of the injury to a customer within the establishment, the shopkeeper is liable for damages, the burden of proving negligence being upon the customer. The court in the Preston case also said that if a foreign substance on which a person might slip and fall is shown to have been left on the floor of a store a sufficient length of time to constitute constructive notice of its presence, the storekeeper would be liable for injuries caused thereby, since he would be under a duty to remove such material within a reasonable time after it finds its way to the floor, irrespective of its source. The court pointed out that the storekeeper would not be liable if a piece of debris were dropped by some third person and had not remained on the floor long enough to charge the storekeeper with constructive notice.

There is no proof whatsoever in this case that any of defendant's employees dropped or placed the paper on the floor or that they had actual knowledge of its presence. Neither was there evidence which would indicate that it was the type of tissue paper used in shoe boxes. The evidence is limited to establishing that the paper was a relatively smooth piece of tissue paper and was somewhat dirty, its appearance indicating that it may have been stepped on, and that it was on the floor in defendant's store near Mrs. Norman's right foot following her fall. It was thus incumbent upon plaintiffs to prove by either direct or circumstantial evidence that the piece of tissue paper was on the floor of defendant's store for such a length of time that the defendant could be said to have constructive notice of its presence. Messner v. Red Owl Stores, Inc. *supra*; Lucas v. City of Juneau (D. C. Alaska) 168 F. Supp. 195.

Plaintiffs argue that the jury could reasonably infer from the appearance of the tissue paper that it had been on the floor for a sufficient length of time to constitute constructive notice to defendant of its presence before plaintiff slipped and fell. This court indicated in the Messner case that the mere showing that the banana peel there involved was in a naturally deteriorated condition was not sufficient to charge a defendant with constructive notice of its presence, since it may have been in that condition when it was dropped on the floor. We are unable to

find any statement of this court in the Messner case which says or implies that a customer who slips on a piece of debris the appearance of which indicates that it may have been stepped upon has an automatic right to recovery from the storeowner. The fact that the item may appear to have been stepped on and is dirty is only one of the factors to be considered in determining whether a storeowner has constructive notice of its presence when there is no evidence from which it could be inferred that an employee had placed or dropped it there. No storekeeper would be liable for an accident caused by a piece of debris blown into his store or carried in and dropped by some third person if it had not remained in his store long enough to charge him with notice.

In Penny v. Sears Roebuck & Co. 193 Minn. 65, 66, 258 N. W. 522, we stated:

"The assignments of error are directed solely to the proposition that the evidence of plaintiffs made defendants' alleged negligence an issue for the jury. Plaintiff's own testimony did not make a case. It was to the effect that as she was walking along the vegetable counter she suddenly slipped on her heel, and the ankle bent, causing intense pain. She grabbed onto a part of the counter, and, picking up the right foot with her left hand, she 'found a couple of green string beans adhered to the heel'; she looked down, and 'there were several other beans on the floor and a couple of pieces of lettuce.' There was nothing to show how these bean pods and pieces of lettuce came to be on the floor."

In that case there was evidence that defendant had been diligent in keeping the floor clean. We held that merely proving that the beans were on the floor was not enough to establish defendant's negligence and affirmed the verdict directed for defendant.

We recognize that the accident and the resulting injury to Mrs. Norman were most unfortunate, but we are here bound by the rules which govern the burden of proof. Since defendant is not an insurer of its customers' safety, its liability depends upon proof of its negligence. Merely establishing that the tissue paper was on defendant's floor near plaintiff's right foot after she fell cannot of itself establish defendant's negligence. The paper may have blown into the store through an open door as other customers walked in or as plaintiff walked in, or it may

have been dropped by another customer or thrown on the floor seconds prior to plaintiff's mishap. It may have attached itself to Mrs. Norman's shoe as she walked from another store to defendant's store. Any number of possibilities can be suggested, but it is obvious that plaintiffs did not sustain their burden of producing the required proof that defendant's negligence was the proximate cause of the accident and the resulting injury. It follows that the trial court was justified in granting defendant's motion for a directed verdict.

Affirmed.