# DORIS U. CARTER v. WESTERN UNION TELEGRAPH COMPANY.

133 N. W. (2d) 833.

February 26, 1965—No. 39,290.

*Preus, Maag & Abdo, H. E. Maag,* and *E. John Abdo,* for appellant.

*Diessner, McEachron, Wurst, Bundlie & Carroll, Van Valkenburg, Moss & Flaherty,* and *William E. Haugh, Jr.,* for respondent.

SHERAN, JUSTICE.

Appeal from an order of the district court denying defendant's motion for judgment notwithstanding the verdict or a new trial.

Plaintiff was injured when she slipped and fell in the lobby of the Western Union office in the city of Minneapolis on May 7, 1960. Her status was that of a business visitor. An action for the damages sustained resulted in a verdict for plaintiff and the post-trial motion, which was denied.

Defendant seeks a reversal upon the grounds (1) that the evidence fails to show that negligence of defendant was a proximate cause of injury; (2) that plaintiff was guilty of causative contributory negligence as a matter of law; and (3) that the trial court erred with respect to its instructions.

1a. The jury was justified in finding that defendant's employees were negligent because, having knowledge of the presence of a dangerous condition in the Western Union office where business visitors were invited and expected to be, they failed to use reasonable precautions to remove the hazard or warn of its presence.[1]

---

[1] See, Norman v. Tradehome Shoe Stores, Inc. 270 Minn. 101, 132 N. W. (2d) 745; Hubbard v. Montgomery Ward & Co. Inc. 221 Minn. 133, 21 N. W. (2d) 229; Saari v. S. S. Kresge Co. 257 Minn. 290, 101 N. W. (2d) 427; Messner v. Red Owl Stores, Inc. 238 Minn. 411, 57 N. W. (2d) 659.

The lobby, covering an area of about 27 feet (N. S.) by about 17 feet (E. W.), has two entranceways separated by a distance of about 6 feet and located in its north wall. The more easterly of them opens onto Second Avenue; the more westerly affords access to the building of which the office is a part. Two writing desks with chairs were placed in the middle of the lobby. A radiator extends from the north wall between the entryways. Next to the radiator and near the more easterly of the doorways, there was a cylindrical metal cigarette receptacle containing sand.

Plaintiff, Doris U. Carter, entered the lobby through the more westerly of the entryways and proceeded to a counter running along the west side of the lobby where, with the aid of Mrs. Jean W. Tallaksen, a Western Union employee, she dispatched a money order.

Just before Mrs. Carter's arrival, Mrs. Tallaksen had observed a small boy amuse himself while sitting in the lobby by spreading sand which he removed from the cigarette receptacle on the floor near its base. Then he wet it. The performance had prompted her to comment to another employee working behind the counter, "This little boy has certainly messed up the lobby. We should have it cleaned up." Although there was a maintenance man available in the building and a third employee of the defendant, Mr. Roger Roedel, was nearby, no immediate action was taken.

Notwithstanding this observation of events occurring before plaintiff entered the premises of the defendant, no warning of the condition was given to her when she came to the counter. Mrs. Tallaksen testified:

"Q. You at no time warned her about this condition on the floor, did you?

"A. No, I didn't.

"Q. You had an opportunity to do it while she was there eight or ten minutes transacting her business, did you not?

"A. Yes."

1b. The jury was justified in finding that Mrs. Carter fell because of the wetted sand on the floor.

Just before the accident she turned from the counter and walked

toward the easterly exit, intending to go through it. Reaching the door, she noted that it was locked and that a sign on it directed her to use the westerly door instead. She testified:

"A.   I was at the door before I realized it was closed.

"Q.   And then which way did you turn?

"A.   Left.

"Q.   And then will you tell us what happened?

"A.   I suppose I took one step, perhaps two, and went down.

*   *   *   *   *

"Q.   Did your feet slip out from under you?

"A.   Both feet slipped out from under me.

"Q.   Had you noticed any sand or water up to that point on the floor?

"A.   No.

"Q.   Was your attention directed to the sign and turning to see where you were going?

"A.   Yes."

Mrs. Florence Schoberg, called as a witness for the plaintiff, was in the lobby at the time of the accident, having gone up to the counter at about the time that Mrs. Carter left it. She testified:

"Q.   And then what next attracted your attention?

"A.   I heard her make some kind of a gasp or something, and it kind of startled me and I quickly turned and then she was falling. * * *

"Q.   Where did she fall with relation to this area of sand and water?

"A.   She slipped, stepped into the sand and slipped, and then she fell."

It is true that Mrs. Schoberg's testimony contains an apparent inconsistency since she testified that Mrs. Carter "was falling" when she looked toward her and also that she "stepped into the sand and slipped." But such inconsistencies in the expressions of a witness are for the evaluation of the jury in determining credibility and, in our judgment, would not justify this court in declaring as a matter of law that the reported observation of the witness with respect to the place

where Mrs. Carter slipped should be disregarded entirely. In addition, the description by Mrs. Carter of the movements which she made just before she slipped, and the statement of defendant's employee, Mrs. Tallaksen, that plaintiff fell "just as she got opposite the cigarette receptacle" which was "right in the area where the sand and water was," give support to the jury's finding of causal relationship between the dangerous condition and the accident.

2. The question of whether Mrs. Carter was contributorily negligent in a causative sense was also for the jury.[2] The door through which she tried to leave was closed even though so located as to appear usable. The sign on it directing her attention to the other door as a means of egress was a distracting circumstance tending to divert her attention from minute examination of the asphalt-tiled floor on which she was walking. Wetted sand on the lobby floor is not a condition anticipated ordinarily by persons using the facilities afforded by the Western Union Telegraph Company. And, as Mr. Lawrence C. Thornton, defendant's district manager, testified with respect to observations of the sand made by him at the scene shortly after the accident occurred:

"A. The sand was in an area, graduated somewhat, about 18 inches in circumference around the receptacle. The moisture, and it was this moisture largely absorbed by the sand, extended in an area about six inches in circumference from the receptacle.

"Q. About six inches?

"A. Yes, sir.

"Q. And the rest of the sand extended approximately 18 inches?

"A. Yes. It graduated out, a little thinner as it went out further.

"Q. Was it noticeable on the floor as you looked at it?

"A. *You wouldn't notice it unless it had been called to your attention.*" (Italics supplied.)

3. The claims of error concerning instructions do not justify re-

---

[2]See, Zuercher v. Northern Jobbing Co. 243 Minn. 166, 66 N. W. (2d) 892; Flynn v. Arcade Investment Co. 253 Minn. 107, 91 N. W. (2d) 113; Dukek v. Farwell, Ozmun, Kirk & Co. 248 Minn. 374, 80 N. W. (2d) 53; Gray v. First Nat. Bank, 250 Minn. 539, 85 N. W. (2d) 668.

versal. Defendant submitted no written request for instructions to the trial court, although it did move for a directed verdict in its favor on the ground, among others, that the defendant "did not under any circumstances have a reasonable time within which to appreciate the danger and to cure it."

The trial judge, instructing the jury with respect to the duty of the defendant, stated, among other things:

"* * * The proprietor * * * must exercise ordinary care to maintain the premises in a reasonably safe condition as to that invitee and all other invitees. If the proprietor has actual knowledge that there are hazards or dangerous conditions that might subject an invitee to injury, it is the proprietor's duty to exercise reasonable care to remove the hazard or dangerous condition or to duly warn the invitee of such hazard or danger, if any, in order that an invitee who is unaware thereof may guard against harm.

"The shop keeper is not an insurer of the safety of its invitees.

"Breach of a duty such as to constitute negligence in the keeping of a premises reasonably safe is not proved by the mere occurrence of an accident. * * * Pertinent features to be considered, among others, are the nature of the business, the size of the store, its relationship to the stores in the immediate vicinity, the number of employes, the knowledge possessed by such employes, the kind of business that is transacted, the number of invitees, the age of invitees, the nature of the alleged dangerous condition, its location, distracting circumstances, if any, and all other circumstances existing at the time leading up to the incident in question."

At the close of the instructions and before the jury retired, the attorney for the defendant stated:

"We object to a lack of charge by the Court to the jury on the question of reasonable time in which the defendant had to clean up the debris if it deemed it dangerous."[3]

---

[3]In support of the legal theory forming the basis of this objection to the instruction, defendant cites: Mattson v. St. Luke's Hospital, 252 Minn. 230, 89 N. W. (2d) 743, 71 A. L. R. (2d) 422; Winsby v. Kertell, 10 Cal.

In the absence of a preinstruction request on the part of defendant's attorney, we do not believe that prejudicial error has been made to appear. The jury was clearly advised that there was no liability on the part of the defendant in the absence of actual or constructive knowledge of the dangerous condition. It was informed also that the defendant was not an insurer of the safety of its premises and that its duty with respect to removal of debris or warning of its presence was limited to the exercise of reasonable care under the circumstances. If the trial court, having completed its instructions as outlined, had then, in response to the exception, told the jury that the period of time elapsing between the acquisition of knowledge of a dangerous condition and the occurrence of an accident was a particular circumstance for it to keep in mind, the result could have been an overemphasis of this facet of the case.

In the absence of a written request for a specific instruction, this court is reluctant to order a new trial because of the failure on the part of the trial court to give an instruction satisfactory to the complaining party. See, Botz v. Krips, 267 Minn. 362, 126 N. W. (2d) 446.

Our conclusion is that the trial court properly denied defendant's motion for judgment notwithstanding the verdict or a new trial.

Affirmed.

---

App. (2d) 61, 50 P. (2d) 1075; Hewitt v. Katz Drug Co. (Mo. App.) 199 S. W. (2d) 872; Hubbard v. Montgomery Ward & Co. Inc. *supra.*