Raymond DALLUM, et al.,
Respondents,

v.

FARMERS UNION CENTRAL EXCHANGE, INC., Appellant.

No. C5–90–724.

Court of Appeals of Minnesota.

Nov. 13, 1990.

Review Denied Jan. 14, 1991.

Kenneth F. Johannson, Dickel, Johannson, Taylor & Rust, P.A., Crookston, for appellant.

Kurt J. Marben, Charleson & Marben, P.A., Thief River Falls, for respondents.

Considered and decided by DAVIES, P.J., and LANSING and THOREEN *, JJ.

## OPINION

DAVIES, Judge.

Raymond Dallum sued Farmers Union Central Exchange, Inc. (Cenex) for damages under theories of breach of contract and promissory estoppel. By special verdict, the jury found no contract, but did find the elements of promissory estoppel. The jury awarded Dallum $75,000 damages and the trial court entered judgment for that amount along with costs and prejudgment interest. Cenex appeals from the denial of its alternative motions for judgment notwithstanding the verdict or for a new trial. We affirm.

* Acting as judge of the Court of Appeals by ap-

## FACTS

In 1979, Cenex, because of a rail car shortage, became interested in shipping potash from Canada to its storage facilities in Roseau by truck instead of train. Daniel Forkrud, then plant food manager in charge of marketing and distribution of fertilizer for Cenex, discussed this idea with Dwight Roll, the manager of Farmers Union Oil Company of Roseau. Roll in turn approached Ray Dallum, a local farmer and truck driver, to see if he would be interested in hauling fertilizer for Cenex. When Dallum expressed an interest, Roll scheduled a meeting for him with Forkrud at the Cenex corporate offices in St. Paul.

In late March or early April 1979, Dallum and Roll met with Forkrud in St. Paul. During this meeting, Forkrud and Dallum discussed the possibility of Dallum hauling potash and anhydrous ammonia for Cenex. Forkrud stated Cenex was willing to pay the same freight rate for the truck shipments as charged by the railroad. Based on information given to him by Forkrud, Dallum estimated that Cenex would need a minimum of 200 tons per week of potash hauled from Canada to the Roseau area. At trial, while Forkrud denied there was an agreement to haul a specific number of loads per week, he did admit Dallum indicated how many loads he could haul and that in response Forkrud stated Cenex would "be interested in using his service." Dallum testified that at the meeting he and Forkrud planned on trucks hauling for Cenex eight to nine months a year.

Following the meeting, Dallum looked into the feasibility of forming a trucking company. Concluding that hauling for Cenex would be profitable, Dallum determined that an initial investment of between $35,000 and $40,000 would be needed to start the company. His brother Allan Dallum and another investor agreed to invest in the company with him. During that summer, Dallum talked with Forkrud once or twice by phone to update him on the progress being made in forming the trucking company.

pointment pursuant to Minn. Const. art. VI, § 2.

On August 31, 1979, before purchasing equipment, Ray and Allan Dallum met with Forkrud again. The purpose of this meeting was to obtain assurance that enough work would be available to cover payments for three new semi-tractors to be leased for five years. The Dallums explained that both they and Minnesota Truck Center, the company the trucks were to be leased from, needed this assurance. In response, Forkrud prepared a letter the Dallums could show Minnesota Truck Center. The relevant part of the letter provided:

> If we can use a dependable trucker, such as yourselves, in the off season and be assured of your availability for in-season haulage of ammonia the arrangement would be sound. We look forward to working with you on a continued basis.

At trial, Forkrud admitted the purpose of the letter was to assure the truck lessor that the Dallums had a "working arrangement" with Cenex and would be able to make their truck payments.

Later in the day, following the meeting, the Dallums entered into a truck lease agreement with Minnesota Truck Center, which was given a copy of the letter.[1] The Dallums also later obtained other equipment and made other expenditures in order to begin hauling fertilizer for Cenex. The other equipment obtained and expenditures made included the purchase of three new hopper-bottom trailers for hauling potash, three power take-off units to unload anhydrous ammonia, insurance, Minnesota licenses, Canadian permits, and the overhaul of a truck personally owned by Ray Dallum. When Dallum was ready to begin hauling he had spent the initial investment of approximately $35,000.

Dallum hauled potash for Cenex for about three weeks in November of 1979. After receiving notice from Cenex that trucks were not being loaded at the potash mines because of a strike, Dallum stopped hauling. While it was disputed at trial

whether or not there was a strike, it is clear that Dallum did not resume hauling fertilizer for Cenex until the spring of 1980.[2] At that time, anhydrous ammonia was hauled during May; potash was hauled from June until the end of August. Dallum was then notified there would be no more hauling of potash because Cenex wanted to use rail transportation in order to get all of its potash loaded before September 1, when a price increase was going into effect. With no more orders to haul potash, Dallum decided to return the trucks to Minnesota Truck Center. The trailers were also eventually either returned or sold.

Dallum then sued Cenex for damages under the theories of breach of contract and promissory estoppel. On November 29, 1989, by special verdict, a jury found that that while there was no contract, Cenex had promised Dallum it would use him to haul fertilizer. The jury also found it was reasonable and foreseeable that Dallum would rely on this promise to his detriment. The jury awarded damages in the amount of $75,000. Cenex's post-trial motions for judgment notwithstanding the verdict and for a new trial were denied. Judgment was entered on January 16, 1990, for $75,000 together with prejudgment interest from November 5, 1985, to December 20, 1989, for a total judgment of $100,855.20, plus costs.

### ISSUES

1. Was the verdict finding Farmers Union Central Exchange liable for damages under the claim of promissory estoppel supported by the evidence and not contrary to the law?

2. Does an allegedly inadequate jury instruction on the measure of damages in a promissory estoppel action constitute reversible error when no other instruction is submitted to the trial court?

---

1. The lease was formally made in the name of R.A.D., Inc., which was not incorporated until September 10, 1979. (Allan Dallum left the company after approximately one month.) Throughout this opinion, for simplicity, we treat Dallum as the real party in interest.

2. Dallum attempted to replace the Cenex hauling with timber hauling in Oregon. This proved to be unprofitable.

3. Is R.A.D., Inc. a proper party to the claim for promissory estoppel when it was not incorporated until after the underlying promises or representations on which the action is based were made?

4. Was the jury's damage award excessive and not supported by the evidence?

5. Did the trial court err in not admitting hearsay statements under Minn.R. Evid. 803(24)?

6. Did the trial court err in awarding prejudgment interest?

## ANALYSIS

### I.

Regarding jury verdicts the supreme court has stated:

> [An appellate court] will sustain a jury verdict if it is possible to do so on any reasonable theory of the evidence. It will set aside a jury verdict only if manifestly contrary to the evidence when viewed in the light most favorable to the verdict.

*Hughes v. Sinclair Marketing, Inc.*, 389 N.W.2d 194, 198 (Minn.1986) (citations omitted); *see also Northern Petrochemical Co. v. United States Fire Ins. Co.*, 277 N.W.2d 408, 410 (Minn.1979).

■ In Minnesota, the doctrine of promissory estoppel is applicable when:

> (1) a promise has been made; (2) the promisor should have reasonably expected the promise to induce action by the promisee; (3) the promisee does in fact act; and (4) justice requires enforcement of the promise.

*McNeill & Associates, Inc. v. ITT Life Ins. Corp.*, 446 N.W.2d 181, 186 (Minn.App. 1989), *pet. for rev. denied* (Minn. Dec. 1, 1989); (*citing Grouse v. Group Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn. 1981)); Restatement (Second) of Contracts § 90 (1981). In this case, Cenex argues there is no evidence it promised Dallum he could haul all or any fertilizer for it for a definite period of time. Consequently, he could not reasonably expect the "mutually convenient arrangement" between Cenex and him to last forever.

■ The words and conduct of Cenex, however, allowed the jury to conclude that Cenex made a promise which it could reasonably foresee Dallum would rely on in forming the trucking company. While it is unclear whether Forkrud was specifically informed a five-year truck lease was going to be entered into, he did give Dallum a letter of assurance to be used to obtain the lease of the trucks which stated he looked forward to working with them "on a continued basis." Based on this and other evidence, the jury could reasonably find that Cenex promised Dallum it was going to use him to haul fertilizer and that it was also reasonable for him to infer from the promise that Cenex would provide enough shipping business to allow him to at least cover his truck lease payments and other reasonable expenses. Further, the jury could have accepted both Ray and Allan Dallum's testimony that Forkrud expressed the intent to have the trucks haul for Cenex eight to nine months a year. As a result, the trial court properly determined there was sufficient evidence for the jury to conclude it would be unjust not to hold Cenex responsible for the consequence of the promise it effectively made.

### II.

Cenex argues on appeal that the jury instruction given by the trial court on the measure of damages in a promissory estoppel action was inadequate. The trial court instructed the jury as follows:

> The measure of damages in promissory estoppel is the amount that a person to whom the promise has been made has been induced to expend on the faith of the promise.

While Cenex objected to this proposed jury instruction at trial, it did not submit an alternative or additional instruction to the court. On appeal, Cenex argues that while the instruction properly limits recovery to out-of-pocket expenses the trial court should have specifically set forth what items the jury could consider in assessing damages.

■ All a trial court is required to do is give a charge which "as a whole con-

vey[s] to the jury a clear and correct understanding of the law of the case." *Barnes v. Northwest Airlines, Inc.,* 233 Minn. 410, 421, 47 N.W.2d 180, 187 (1951). "A charge which is substantially correct is sufficient." *Id.* 233 Minn. at 424, 47 N.W.2d at 189. In addition, "the trial court has considerable latitude in the choice of language to be used in its instructions * * *." *Gardner v. Coca Cola Bottling Co.,* 267 Minn. 505, 512, 127 N.W.2d 557, 562 (1964) (footnote omitted); *see also State Bank of Hamburg v. Stoeckmann,* 417 N.W.2d 113, 116 (Minn.App.1987), *pet. for rev. denied* (Minn. Feb. 17, 1988).

■ The Minnesota Supreme Court has stated that in actions based on promissory estoppel, "[r]elief may be limited to damages measured by the promisee's reliance." *Grouse v. Group Health Plan, Inc.,* 306 N.W.2d 114, 116 (Minn.1981). In other words, relief may be limited to the party's out-of-pocket expenses made in reliance on the promise. This interpretation of *Grouse* regarding the measurement of damages in promissory estoppel actions is consistent with the measurement enunciated by other courts. *See, e.g., Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d 69, 73 (2d Cir.1989) ("Prevailing on a promissory estoppel claim * * * sometimes entitles a party only to its out-of-pocket expenses, rather than to benefit-of-the-bargain damages."); *R. Renaissance, Inc. v. Rohm and Haas Co.,* 674 F.Supp. 591, 595–96 (S.D. Ohio 1987) (promissory estoppel damages limited to reliance damages and out-of-pocket expenses, not including lost profits). *See generally* 22 Am.Jur.2d *Damages* § 50 (1988) ("The measure of damages based on reliance expenditures is the amount that a nondefaulting party has been induced to expend on the faith of the contract.") (footnote omitted).

■ In this case, the instruction given by the trial court may not have been perfect because it did not specifically restrict the measure of damages for promissory estoppel to the net detriment incurred by the promisee in reliance on the promise. But the instruction was not so general or broad as to allow the jury, in calculating damages, to consider items other than out-of-pocket and other expenditures made in reliance on the promise. There was no evidence of profits that should have been recognized as an offset to expenditures. As a result, the measurement of damages given by the trial court was not inadequate and does not constitute reversible error. This conclusion is supported by the fact that Cenex did not submit a proposed instruction to the trial court on the measure of damages; it cannot now complain on appeal that the instruction given was inadequate. *See DeBlois v. Great Northern Railway Co.,* 99 Minn. 18, 21, 108 N.W. 293, 294 (1906); *see also Carter v. Western Union Telegraph Co.,* 270 Minn. 341, 347, 133 N.W.2d 833, 837 (1965). ("In the absence of a written request for a specific instruction, this court is reluctant to order a new trial because of the failure on the part of the trial court to give an instruction satisfactory to the complaining party.")

### III.

Cenex argues on appeal that R.A.D., Inc. is not a proper party to the claim for promissory estoppel because it was not formally incorporated until after the underlying promise on which the action is based was made and as a result, it was not foreseeable that R.A.D. would rely upon any promises made to Dallum by Cenex. The Restatement (Second) of Contracts § 90 (1981), however, expressly provides that a third party may hold a promissor to its promise if reliance on the promise by a third party was foreseeable. The Wisconsin Supreme Court has also stated that:

> Ordinarily only the promisee and not third persons are entitled to enforce the remedy of promissory estoppel against the promissor. However, if the promisor actually foresees, or has reason to foresee, action by a third person in reliance on the promise, it may be quite unjust to refuse to perform the promise.

*Hoffman v. Red Owl Stores, Inc.,* 26 Wis.2d 683, 699, 133 N.W.2d 267, 275 (1965) (citing 1A Corbin, *Corbin on Contracts,* p. 220, § 200 (1963)).

In this case, it was foreseeable that R.A.D. and its investors would rely on the representations made by Cenex to Dallum. Prior to the August 31, 1979, meeting, Ray Dallum informed Forkrud that he was in the process of forming a trucking company to haul fertilizer for Cenex. While Forkrud testified he was unaware the company to be formed would be a corporation, it was reasonably foreseeable that this company, regardless of whether it was organized as a corporation, partnership, or in some other form, would act in reliance on the promise made by Cenex. Consequently, under the Restatement and *Hoffman* view, R.A.D. is a proper party to the promissory estoppel claim.

### IV.

Cenex argues on appeal that the jury's damage award was excessive and not supported by the evidence. In Minnesota, an appellate court:

> will not interfere with the jury's award of damages unless its failure to do so would be shocking or would result in plain injustice.

*Hughes v. Sinclair Marketing Inc.*, 389 N.W.2d 194, 199 (Minn.1986); *see also Prichard Bros., Inc. v. Grady Co.*, 436 N.W.2d 460, 467 (Minn.App.1989), *pet. for rev. denied* (Minn. May 2, 1989).

> To be excessive, an award of damages must so greatly exceed what is adequate as to be accountable on no other basis than passion and prejudice.

*Kinikin v. Heupel*, 305 N.W.2d 589, 596 (Minn.1981). In order to make this determination, "[t]he trial court must determine whether the verdict is within the bounds of the highest sustainable award under the evidence." *McPherson v. Buege*, 360 N.W.2d 344, 347 (Minn.App.1984). The trial court's determination "on this point will only be disturbed for a clear abuse of discretion." *Nelson v. Nelson*, 283 N.W.2d 375, 379 (Minn.1979); *see also Kinikin*, 305 N.W.2d at 596.

The jury's award of damages in this case was not excessive and is supported by the evidence. In the memorandum accompanying its denial of Cenex's motions for judgment notwithstanding the verdict and for a new trial, the trial court stated that "there was evidence which, if believed, added up to the expenditure by the plaintiffs of $76,847." The trial court listed items adding up to that number. Since $75,000 is within the bounds of the highest sustainable award under the evidence, or $76,847, the trial court did not clearly abuse its discretion in holding that the jury's damage award was not excessive and was supported by the evidence.

### V.

Cenex also argues on appeal, and without any support other than a mere reference to the rule, that the trial court erred in not admitting into evidence certain hearsay statements in Dwight Roll's deposition based on the "other exceptions" exception to the hearsay rule. *See* Minn.R. Evid. 803(24). This court has stated that "'[d]eterminations regarding hearsay evidence are largely within the discretion of the trial court.'" *State v. Whiteside*, 400 N.W.2d 140, 145 (Minn.App.1987), *pet. for rev. denied* (Minn. Mar. 18, 1987) (citation omitted). In addition, "the key issue in determining whether hearsay testimony is admissible under Rule 803(24) is the hearsay's trustworthiness." *Id.* at 146; *see also State v. Ortlepp*, 363 N.W.2d 39, 44 (Minn.1985).

The hearsay evidence desired to be admitted by Cenex concerned testimony by Roll regarding the labor problems at the potash mine in Canada. This testimony was based upon statements taken when Roll was still a party defendant to the action, before being dismissed on September 18, 1986. There was an incentive for Roll to fabricate at the time the deposition was taken, and hence, the testimony does not have the equivalent circumstantial guarantees of trustworthiness as the other exceptions to the hearsay rule possess. The trial court did not abuse its discretion in excluding Roll's hearsay testimony.

### VI.

Finally, Cenex argues that the trial court erred in calculating the amount of

prejudgment interest to be awarded in this action. An award of prejudgment interest is governed by Minn.Stat. § 549.09, which provides, in pertinent part:

> Except as otherwise provided by contract or allowed by law, preverdict or prereport interest on pecuniary damages shall be computed as provided in clause (c) from the time of the commencement of the action, or the time of a written settlement demand, whichever occurs first, except as provided herein.

Minn.Stat. § 549.09, subd. 1(b) (1988).

Cenex contends that prejudgment interest should not have been awarded by the trial court because Dallum did not allege promissory estoppel as a theory of recovery until November 28, 1989, when the trial court allowed him to amend his complaint. The trial court specifically and properly found, however, that both the original complaint and the amended complaint set forth a cause of action based on promissory estoppel. As a result, the trial court correctly awarded prejudgment interest from November 5, 1985, the date the cause of action was commenced by service of the first summons and complaint upon Cenex, until December 20, 1989.

Cenex also argues that other errors warrant a new trial, but upon a review of the record and the law, we are satisfied that these alleged errors are completely without merit.

## DECISION

The decision of the trial court is affirmed in all respects.

Affirmed.