SCOTT *v.* UNIVERSITY OF MICHIGAN ATHLETIC ASS'N.[1]

1. UNIVERSITY OF MICHIGAN — ATHLETIC ASSOCIATION — NEGLIGENCE—LIABILITY.

The University of Michigan Athletic Association is a voluntary association of undergraduates and alumni who contribute money, with an associate membership of business men, having a graduate director, who, though he is paid by the regents and is dependent for his position upon his engagement by them, is one of the directors of the association, and by its constitution is a member of its financial committee and also exercises such powers and performs such duties as its board of control may from time to time determine and require. The funds of the association are devoted to athletics and to the furnishing and maintaining of a field belonging to the University devoted to athletics, and the regents exercise no control over the funds except to insist upon a proper audit of accounts. The association, through its graduate director, asked and received from the regents permission to erect a bleacher upon the field and erected the same accordingly. *Held,* that the association and its officers, and not the regents, were proper parties defendant to an action brought by a spectator at a football game for personal injuries resulting from the collapse of the bleacher due to negligent construction.

2. SAME — ATHLETIC ASSOCIATION — EXHIBITION — LIABILITY FOR NEGLIGENCE.

The University of Michigan Athletic Association and its officers are not relieved from liability for injuries to a spectator at a game of football, caused by the collapse of a wholly inadequate bleacher, by the fact that the structure was erected by a competent and experienced builder, of good materials, and before it was used it was inspected by competent inspectors who pronounced it safe; since by inviting the public and charging an admission fee to witness games, the association occupied the position of a proprietor of a public resort, and there was an implied contract that, except for defects not discoverable by reasonable means, the stand was safe.

---

[1] Rehearing denied September 10, 1908.

Error to Monroe; Lockwood, J.   Submitted January 23, 1908.   (Docket No. 76.)   Decided May 26, 1908.

Case by Frank W. Scott against the University of Michigan Athletic Association and others for personal injuries.   There was judgment for defendants on a verdict directed by the court, and plaintiff brings error.   Reversed.

Lee N. Brown, E. B. Norris, and J. W. Bennett, for appellant.

Arthur Brown and Edson R. Sunderland (Thomas A. Bogle, of counsel), for appellees.

OSTRANDER, J.   Testimony was given from which the jury might have found that plaintiff was injured by the collapse of a stand, or bleacher, erected by the defendant association, for the use of and used by the public, at a game of football to which the public was invited and required to pay an admission fee for the profit of said association; that the stand, designed to support 5,000 spectators, collapsed, from inherent and discoverable weakness, when put to its intended use, when occupied by less than 3,000 persons.   At the trial, both parties introduced testimony and the court, without, so far as the record discloses, assigning reasons, directed a verdict for defendants.   Judgment was entered on the verdict.

Plaintiff, appellant, contends that the case should have been submitted to the jury.   Defendants make three contentions.   They are (1) that the plaintiff has in any event no right of action against these, or any of these, defendants; (2) that plaintiff has not shown that defendants were guilty of any negligence; (3) that if the circumstances made out a prima facie case of negligent construction of the stand, the undisputed testimony for defendants established the fact of the exercise of due care on the part of defendants to render the premises safe.

And first, as to the parties defendant.   They are the

voluntary association and its officers, of whom defendant Baird is one, filling the position of graduate director. The active members of the association are the undergraduates and alumni who contribute money, with an associate membership of business men. Defendant Pipp is the person employed by the association to erect, and who did erect, the stand. The theory of defendants is:

"Mr. Baird as agent of the board of regents was authorized by Regent Fletcher to put up the bleacher; he did so, had it inspected, and the board of regents had it inspected. Not only does the record fail to show any act whatever on the part of the Athletic Association in regard to the building of the bleacher, but it shows affirmatively that the Athletic Association could not have built a bleacher had it desired to do so. Ferry Field was a recreation ground for the students, and the students, of course, used the field and the structures standing upon it. As Regent Fletcher testified, the association was simply the student in another form. It appears, therefore, that while the Athletic Association had nothing to do with the erection of this bleacher, it was allowed by the regents to use the field and the bleacher for the purpose of carrying on and exhibiting the football game between Michigan and Wisconsin Universities on November 18, 1905. But the board of regents never surrendered full and absolute control of Ferry Field. While the association was using the field it was as much subject to the control of the board of regents as at other times. In other words, Ferry Field is exactly like other University property; it is owned and controlled by the board of regents for the use of the students, but such use can never be hostile to or exclusive of the continued control by the board. Having no independent rights in Ferry Field the Athletic Association could sustain no independent liabilities consequent upon its use.

"It seems clear that the Athletic Association, under its permission from the board of regents to use Ferry Field pursuant to the general purposes of the University, at most merely represented the board of regents in conducting the game in question. So far as the public is concerned, the association might therefore be deemed the agent of the board of regents in conducting and exhibiting the game for the benefit of all who wished to witness it. And in that capacity the liability of the Athletic Association would appear to be the same as that of Mr. Baird

himself. Each is liable, if at all, as agent of the board of regents.

"Now, it is an elementary principle of the law that an agent is not liable for mere acts of nonfeasance, but only for acts of misfeasance. This principle has been applied in a great variety of cases."

Whether the fact is or is not controlling, a point not precisely involved, we do not find in the record any testimony tending to prove that the regents, directly or indirectly, constructed or supervised the construction of the stand, or that the defendant association or Mr. Baird was an agent of the regents in that behalf. The record discloses that while Mr. Baird applied to the chairman of the committee on buildings and grounds for and received permission to build the bleacher, it and all other structures upon the grounds were paid for out of the moneys of the defendant association. The funds of the association are devoted to athletics and to the furnishing and maintaining of Ferry Field. The association receives and disburses its money and the regents exercise no control of its funds except to insist that there shall be a proper auditing of accounts. Assuming that the regents might have refused permission to erect the particular bleacher, they did not do so. They did not erect it. Assuming, further, that Mr. Baird is paid for his services as adviser of the association's athletic policy by the regents, and that his position of graduate director is dependent upon his engagement with the regents, he is nevertheless one of the directors of defendant association, and by its constitution is a member of its financial committee, and he also exercises such powers and performs such duties as its board of control may from time to time determine and require. Whether the related facts affect alike all of the defendants, whether for any reason the judgment should be affirmed as to some of the defendants, are subjects not referred to in argument and questions not considered.

The remaining contentions may be considered together. The testimony goes much beyond proving merely an acci-

dent and resulting injury. That relied upon to show that defendants exercised due care tends to prove that the stand was erected by a competent and experienced builder, of good materials; that before it was used it was inspected by engineers and others admittedly competent to perform the work of inspection, who pronounced it safe. It is clear, however, that a wholly inadequate structure was in fact tendered for public use, and it cannot be determined, upon this record, as matter of law, that a latent and not a patent defect, discoverable in the exercise of proper care, existed. The managers of the grounds and stands occupied upon the occasion in question the position of proprietors of a public resort. Plaintiff was not a mere licensee and did not occupy the stand by mere invitation. Whether responsibility to the plaintiff is grounded, in the form of action instituted, upon a contract or upon a duty, it exists, if at all, because of an implied contract. The implied contract was that the stand was reasonably fit and proper for the use to which it was put; the duty was to see to it that it was in a fit and proper condition for such use. Neither plaintiff nor the public generally would be expected to examine the stand and judge of its safety. This consideration, and the probable consequences of failure of the structure, imposed upon the responsible and profiting persons the duty of exercising a high degree of care to prevent disaster. They were not insurers of safety, they did not contract that there were no unknown defects, not discoverable by the use of reasonable means; but, having constructed the stand, they did contract that, except for such defects, it was safe. 1 Thompson on Negligence, §§ 994–997; 21 Am. & Eng. Enc. Law (2d Ed.), p. 472; *Francis* v. *Cockrell*, L. R. 5 Q. B. 184, 39 L. J. Rep. (N. S.) Q. B. 113, 291. See, also, *Fox* v. *Buffalo Park*, 21 App. Div. (N. Y.) 321, 163 N. Y. 559.

The judgment is reversed, and a new trial granted.

GRANT, C. J., and BLAIR, MONTGOMERY, and CARPENTER, JJ., concurred.