EDITH LINDGREN AND ANOTHER v. DONALD VOGE,
d.b.a. TWIN CITY SPEEDWAY.

109 N. W. (2d) 754.

June 9, 1961—No. 38,113.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and
*M. J. Coyne,* for appellant.
*Larkin, Hoffman, Daly, Corcoran & Lindgren,* for respondents.

NELSON, JUSTICE.

The present appeal involves an action by Edith Lindgren and her
husband, Robert Lindgren, against Donald Voge, doing business as
Twin City Speedway. Defendant is the owner of the Twin City Speed-
way located near New Brighton, Minnesota, where he conducts auto-
mobile races and invites the public to attend for an admission fee.

If we consider the evidence submitted in the most favorable light
to sustain the verdict of the jury, the facts would appear to be as fol-
lows: The plaintiffs attended the races at the speedway on Memorial
Day, May 30, 1958, and paid the regular admission charges. While

the races were in progress, plaintiff Edith Lindgren found it necessary to use defendant's toilet facilities. Separate toilet facilities for men and women patrons are furnished in a concrete-block building on the race-track grounds. The toilets are regular "porcelain" toilets with a top of like material covering the flush boxes. Upon entering the women's toilet facilities, Mrs. Lindgren, accompanied by her 4-year-old niece and a friend, Elsa Lent, observed water on the floor running from the toilet stalls onto the walk in front of the stalls. No one else was present at the time. She chose a stall with less water on the floor, entered it, and directed her niece to a dry spot in a corner so she would not get her feet wet. Mrs. Lindgren saw nothing on the floor but water. When she had used the toilet, she reached back and took hold of the handle located just below the flush-box top and pushed it. The handle did not resist, and Mrs. Lindgren's arm "began faster." The toilet did not flush but at that instant she heard a loud crash and turning around observed one segment of the flush-box top on the seat and the other on the floor. She immediately saw that her wrist had been cut. Mrs. Lent, who observed her wrist a few moments later, testified that Mrs. Lindgren had "such a deep cut that I turned my head."

Shortly after the accident, Veryl Voge, defendant's wife, removed the two segments of the top from the toilet stall. She did not recall seeing any smaller fragments.

The two main segments of the toilet top were offered in evidence. These showed chipping along the broken edges. While it was stipulated between counsel that at least some of the missing pieces were caused by the handling of the exhibits following the accident, the jury may well have found from an examination of these exhibits that the defect had existed for a considerable period of time before the accident occurred.

Mrs. Voge had supervision over the cleaning of the women's toilets. She testified that she did not recall seeing any defects on the last occasion she had cleaned. The record indicates that there had been no inspection of the toilets for at least 2 hours before the accident. There is testimony to the effect that on occasions before the day of the accident the flush-box tops in the women's toilets had been tampered with and would be found "half off" by Mrs. Voge. On at least two

occasions people had removed the brass floaters from the flush boxes, and on at least two other occasions people had broken the covers of flush boxes. Apparently Mrs. Voge continued to use "porcelain" tops to cover the boxes.

From 25 to 30 people were employed at the Twin City Speedway on race days. A large crowd, estimated by one witness as approximately 2,500 people, had assembled on the day in question. No attendant was provided for the women's toilets during the races nor had any provision been made for inspection of these toilets during the races. It appears to have been Mr. Voge's duty to replace broken parts in the women's toilets. He did the repair work about the premises himself. The record indicates that on the day of the accident Mrs. Voge swept out the women's toilet and cleaned the bowls between 12 noon and 1:15 p. m., after which she went to work in the pop stand. Her testimony indicates that she flushed each toilet to be certain it was working properly. She could not recall seeing any defects and did not remember whether any of the toilets were operating improperly. Mrs. Voge was required to take charge of the defendant's food concession stand during the races.

Plaintiffs allege that Mrs. Lindgren was injured because of a dangerous condition in the ladies' toilet facilities caused and permitted by the negligence of defendant. The second count of plaintiffs' complaint realleges this contention and alleges that as a consequence of the injuries his wife received Robert Lindgren sustained certain specified damages. The jury returned a verdict for Mrs. Lindgren of $1,950 and a verdict for Mr. Lindgren of $1,725. Defendant moved for judgment notwithstanding the verdicts, which motion was denied. Defendant appeals from the judgment thereafter entered.

Plaintiffs contend that the proprietor of a place of amusement may be held liable to a patron for an injury resulting from a defective facility furnished by the proprietor when (1) the proprietor, after previous notice of a potential danger from the facility, failed to guard against such danger by maintenance and inspection, or (2) it can be reasonably inferred that the defective condition existed for a sufficient length of time to furnish the proprietor with constructive notice of its existence.

The defendant contends that the issue for determination is whether

a business invitor may be found liable to his invitee on the ground of negligent failure of the invitor to maintain the premises in a reasonably safe condition in the absence of evidence (1) that there was a defect in the premises which involved an unreasonable risk of harm, (2) that the invitor had notice of the defect, and (3) that the invitee's injury was caused by such defect.

Defendant contends that it is obvious from the facts that this case falls into a well-known category of negligence law, namely, the liability of a business invitor to his invitees, and that the basic law is as stated in McDonough v. Newmans Cloak & Suit Co. 247 Minn. 250, 252, 77 N. W. (2d) 59, 61, 66 A. L. R. (2d) 100:

"* * * A shopkeeper has the duty to keep and maintain his business premises, including passageways, in a reasonably safe condition for use of customers or invitees. He is liable only for injuries resulting from his negligence and *is not an insurer* of the safety of his customers."

Defendant contends that in this case there is absolutely no evidence of the existence of a particular defect or of constructive notice of such defect. To support his theory, he cites Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213, and Hubbard v. Montgomery Ward & Co. Inc. 221 Minn. 133, 21 N. W. (2d) 229; but those cases involve actions by a customer against a storekeeper and not against an operator of a place of amusement. What defendant most vigorously contends, however, is that the plaintiffs can prevail only if the defendant can be charged with constructive notice of a condition which involved an unreasonable risk of harm and that in the absence of such notice the defendant cannot be found negligent for failure to correct the condition. He claims that the jury's determination that he had constructive notice of an unknown dangerous defect is entirely unsupported by the evidence. Defendant does admit that in some cases it is possible to determine from the nature of the defect that it had existed for a considerable period of time.[1]

---

[1]See, Hastings v. F. W. Woolworth Co. 189 Minn. 523, 250 N. W. 362 (old hole in floor of dime store).

We find the following statement in 13 Dunnell, Dig. (3 ed.) § 6988:

"Persons who maintain places of public amusement, such as theaters, shows and exhibitions, must exercise a high degree of care for the safety of their patrons. As to stairways, platforms, walks and other structures their duty resembles that of common carriers. The standard of care is reasonable care, but reasonable care in this connection calls for a high degree of care—a care commensurate with the risks involved."

It was stated in Wells v. Minneapolis B. & A. Assn. 122 Minn. 327, 142 N. W. 706, 46 L.R.A. (N.S.) 606, Ann. Cas. 1914D, 922, that the proprietor of a place of public entertainment or amusement must exercise a high degree of care for the safety of invited guests. In Poppleston v. Pantages Minneapolis Theatre Co. 175 Minn. 153, 155, 220 N. W. 418, this court said:

"The law requires of the owners of paid amusement places care and active vigilance in protecting their patrons against perils."

Other courts have made explicit a distinction which is implied in the Minnesota cases. In Wells v. Palm Beach Kennel Club, 160 Fla. 502, 504, 35 So. (2d) 720, 721, Mr. Justice Terrell, speaking for the Florida court, said:

"Places of amusement where large crowds congregate are required to keep their premises in reasonably safe condition commensurate with the business conducted. If the owner fails in this, and such failure is the proximate result of injury to one lawfully on the premises, compensatory damages may be recovered if the one injured is not at fault. J. G. Christopher Co. v. Russell, 63 Fla. 191, 58 So. 45, text 47. One operating a place of amusement like a race course where others are invited is charged with a continuous duty to look after the safety of his patrons. * * *

"We do not mean to imply that they are insurers of the safety of their patrons, but we do say that reasonable care as applied to a race track requires a higher degree of diligence than it does when applied to a store, bank or such like place of business. Numerous cases support this conclusion."

Compare Birmingham Amusement Co. v. Norris, 216 Ala. 138, 140, 112 So. 633, 635, 53 A.L.R. 840, 842, in which the court stated the rule adopted by many courts as:

"* * * when the proprietor of a place of amusement induces people to come upon his premises, 'he thereby assumes an obligation that such premises are in a reasonably safe condition, so that persons there by his invitation shall not be injured by them or in their use for the purpose for which the invitation was extended.' "

We think that rule is in harmony with the holdings of this court with regard to the duty of care imposed upon the proprietor of a place of public amusement.

The court in the Birmingham case approved the application of this rule by the Supreme Court of Michigan in a case in which the plaintiff had been injured by collapse of a bleacher at a football game. In that action, Scott v. University Athletic Assn. 152 Mich. 684, 688, 116 N. W. 624, 625, 17 L.R.A. (N.S.) 234, 236, 125 A. S. R. 423, 426, 15 Ann. Cas. 515, 516, the court said:

"* * * The managers of the grounds and stands occupied upon the occasion in question the position of proprietors of a public resort. Plaintiff was not a mere licensee and did not occupy the stand by mere invitation. Whether responsibility to the plaintiff is grounded, in the form of action instituted, upon a contract or upon a duty, it exists, if at all, because of an implied contract. The implied contract was that the stand was reasonably fit and proper for the use to which it was put; the duty was to see to it that it was in a fit and proper condition for such use. Neither plaintiff nor the public generally would be expected to examine the stand and judge of its safety. This consideration, and the probable consequences of failure of the structure, imposed upon the responsible and profiting persons the duty of exercising a high degree of care to prevent disaster. They were not insurers of safety, they did not contract that there were no unknown defects, not discoverable by the use of reasonable means; but, having constructed the stand, they did contract that, except for such defects, it was safe."

See, Prosser, Torts (2 ed.) § 78, pp. 458, 459; Restatement, Torts, § 343.

This court has recently indicated the scope of duty of one who holds out his property for the use of the public in Connolly v. Nicollet Hotel, 254 Minn. 373, 95 N. W. (2d) 657.

A rule that appears to find general support in the decisions is to the effect that the proprietor or manager of a place of amusement owes a duty to the public who come there by the proprietor's invitation and pay an admission fee inuring to his profit to exercise such reasonable care to see that the premises are safe as is commensurate with the circumstances and the probable risks involved.

It has repeatedly been declared that a proprietor who invites people upon his premises and receives compensation for their entrance has a duty to maintain such premises in a reasonably *safe condition for the contemplated uses thereof and the purpose for which the invitation was extended.* Instructions to that effect were upheld against the contention that this makes the proprietor of a place of amusement an insurer of his patrons' safety in Birmingham Amusement Co. v. Norris, *supra.* Applying the rule to this case, it was the duty of the proprietor to keep the toilet facilities maintained for the public in a reasonably safe condition and to use reasonable care in inspecting them from time to time.

In the case of Stephens v. Akron Palace Theatre Corp. 53 Ohio App. 434, 436, 5 N. E. (2d) 499, 500, the court said:

"We think that where a proprietor invites people upon his premises and receives compensation for the privilege of their entrance, or for their entertainment while there, he impliedly undertakes that, except as to the presence of something not connected with the operation of the business, the premises at the time such invitation is acted upon are reasonably safe for the purposes intended, save only as to those defects which are unseen, unknown, and undiscoverable by the exercise of reasonable skill and diligence, or by any reasonable means of inquiry and examination."[2]

---

[2]Currier v. Boston Music Hall Assn. 135 Mass. 414; 2 Cooley, Torts (4 ed.) § 440; Humphrey Co. v. Ohlson, 32 Ohio Dec. 571, 18 Ohio Cir. Ct.

The jury here must have inferred from the evidence that a defect in the toilet furnished for Mrs. Lindgren's use was in existence at the time she used it. She has testified that her arm was at the level of the flush handle when she was cut. This would indicate that she was cut before the top hit the floor. The description of the cut would indicate that it could have been done only by a broken top. While no one who has testified saw the toilet top fall, the jury could well infer from the evidence that the top was broken before it fell. While counsel stipulated that some of the chipping may have occurred after the accident, in view of the testimony of Mrs. Lindgren and Mrs. Voge that neither recalled seeing any fragments on the floor or in the stall, the jury might well infer that some of the chipping of the top had occurred before the accident and that at the time of the accident the top was already cracked or broken. This court has said that where the facts are such that fair-minded men of ordinary intelligence may differ as to the inferences to be drawn therefrom, the question of negligence is for the jury. Emery v. Minneapolis Industrial Exposition, 56 Minn. 460, 57 N. W. 1132. See, Nicol v. Geitler, 188 Minn. 69, 247 N. W. 8.

It was not incumbent upon the plaintiffs to show by direct evidence the exact manner and cause of the injury; this may appear from the circumstances of the case. It is well established that the plaintiff in a civil action is not required to prove his case beyond a doubt and that all that plaintiffs are required to do is to make it appear to be more probable that the injury came in whole or in part from the defendant's negligence than from any other cause. Neither is the law so exacting as to require every fact and circumstance going to make up a case of negligence, or to identify the proximate cause, to be proved by eye-witnesses or positive, direct testimony. See, Silurian Oil Co. v. Morrell, 71 Okl. 250, 176 P. 964; Arizona Binghampton Copper Co. v. Dickson, 22 Ariz. 163, 195 P. 538, 44 A. L. R. 881.

The jury may not be denied the right to make reasonable inferences. Nicol v. Geitler, *supra;* Paine v. Gamble Stores, Inc. 202 Minn. 462, 279 N. W. 257, 116 A. L. R. 407.

---

(N. S.) 29; 26 R. C. L., Theatres, Shows, etc., § 14; Birmingham Amusement Co. v. Norris, 216 Ala. 138, 112 So. 633, 53 A. L. R. 840; see, also, Lusk v. Peck, 132 App. Div. 426, 116 N. Y. S. 1051.

The plaintiffs contend that defendant's liability for injuries resulting from the defective top rests not only upon his failure to perform his duty to reasonably maintain and inspect the toilets for his invitees and patrons, but also upon evidence from which the jury could reasonably infer that the defect had been in existence for a sufficient time before the accident to give the defendant constructive notice of its existence. Defendant did not furnish an attendant for the women's restroom during the period when the races were in progress. He already knew from past experience in the maintenance of the toilet facilities that people had broken the tops, left them half off, and had even removed parts from the toilets. Even though he had this knowledge, he had not instituted a system of inspection for periods when the restrooms were in greatest use. In view of these facts, whether the defendant performed his duty of inspection and maintenance in a reasonable manner commensurate with the circumstances and the probable risks involved became a question for the jury.

The rule seems well established that the duty of inspection and of knowing of any observable condition of a facility furnished by the proprietor for the use of the paying public rests upon the proprietor himself and not upon the patron or invitee. We think it clear that in such a situation and under such conditions an inference is permitted within reasonable bounds that the negligent omission on the part of the proprietor of the amusement place is causally related to the dangerous condition of the facility. Although defendant here did not know of the broken top, it clearly was a defect discoverable by the use of reasonable means. Of course the distinction must always be drawn between the liability of a proprietor of a public place for injury caused by instrumentalities furnished by him for the use of his patrons and his liability for injury caused by something not connected with the operation of the business and not furnished by him for the use of his patrons. In the latter case a showing of either actual or constructive notice is required to establish the proprietor's liability.

Defendant has cited several cases relative to foreign objects in a proprietor's place of business, these cases variously involving banana peels, string beans, gum, and a nail on the floor of a grocery or department store. The cases so cited, which include Messner v. Red Owl Stores,

Inc. 238 Minn. 411, 57 N. W. (2d) 659; Penny v. Sears Roebuck & Co. 193 Minn. 65, 258 N. W. 522; Saari v. S. S. Kresge Co. 257 Minn. 290, 101 N. W. (2d) 427; Bragg v. The Dayton Co. 212 Minn. 491, 4 N. W. (2d) 320, are not controlling of the circumstances presented in the instant case.

A reading of the record in this case makes it clear that plaintiffs were confined largely to circumstantial evidence in attempting to establish proximate cause, but we think from the whole of the evidence that they have met the requirements applicable to the particular facts in this case. See, Westling v. Holm, 239 Minn. 191, 58 N. W. (2d) 252; Mitton v. Cargill Elev. Co. 124 Minn. 65, 144 N. W. 434; Id. 129 Minn. 449, 152 N. W. 753.

While it is true, as we have already stated, that the defendant was not bound to insure the safety of his patrons, it was his duty to exercise that degree of vigilance for their protection which was made necessary by any probable danger known or discoverable by continuous reasonable inspection in the exercise of reasonable care commensurate with the circumstances. This duty was not merely passive; it was an active obligation to guard against the very risk which the evidence shows might reasonably have been anticipated. See, Johnson v. Amphitheatre Corp. 206 Minn. 282, 288 N. W. 386.

Defendant's only assignments of error are that the trial court erred in denying defendant's motion for a directed verdict and in denying defendant's motion for judgment notwithstanding the verdicts. While certain objections were duly made to the trial court's charge, none of those are complained of on appeal.

Since defendant made no motion for a new trial, the trial court's charge became the law of the case, and whether the verdict is sustained by the evidence must be determined by application of the rules of law laid down in the instructions. See, Rule 51, Rules of Civil Procedure; Smith v. Otto Hendrickson Post 212, 241 Minn. 46, 62 N. W. (2d) 354. Defendant's motion for judgment notwithstanding the verdict admits for the purpose of the motion the credibility of the evidence for the adverse party and every inference which may fairly be drawn from such evidence. That view of the evidence most favorable

to the adversary must be accepted. Fredrickson v. Arrowhead Co-op. Creamery Assn. 202 Minn. 12, 277 N. W. 345.

The court submitted to the jury the issues of proximate cause, defendant's negligence, and Mrs. Lindgren's contributory negligence. The trial court instructed the jury that:

"* * * The fact, standing alone, that the plaintiff was injured while she was a patron at the defendant's race track and while she was using the toilet facilities provided by the defendant for the use of his patrons does not make the defendant liable to her in damages. To make him liable the plaintiff must prove by a fair preponderance of the evidence that the accident was proximately caused by some negligent act or omission of the defendant.

"* * * The owner and operator of a place of amusement or entertainment is not an insurer of the safety of his patrons, but he does owe to them the duty to exercise reasonable care for their safety. This is a continuing duty, which applies not only in the original installation of the equipment or the building of the facility, but continues throughout the entire time of the use of the premises. In determining what is reasonable under the circumstances you should take into consideration all the facts and circumstances surrounding the situation. In other words, reasonable care is a degree of care commensurate with the circumstances and the risks probably involved. For instance, the fact that the toilet facilities furnished by the defendant are the only such facilities available for use by his patrons, and the amount of use made of the facilities by the patrons, are factors which you may consider in determining what is reasonable care under the circumstances of this case."

The charge was fair and complete, fully stating the rights and duties of the parties.

While much of the evidence was circumstantial, and some of it conflicting, the jury found against the defendant on all the issues. We conclude that there is sufficient evidence to sustain the verdicts and the judgment entered thereon.

Affirmed.