JACOBSEN CONSTRUCTION COMPANY, INC., a corporation, and Jelco Incorporated, a corporation, Plaintiffs,

v.

INDUSTRIAL INDEMNITY COMPANY, a corporation, and Insurance Company of North America, a corporation, Defendants, Third-Party Plaintiffs and Respondents,

v.

STRUCTO–LITE ENGINEERING, INC., a Utah corporation, Third-Party Defendant and Appellant.

No. 17219.

Supreme Court of Utah.

Jan. 5, 1983.

Bruce H. Jensen, Raymond M. Berry, Salt Lake City, for third-party defendant and appellant.

Ray R. Christensen, Salt Lake City, for Industrial Indem. Co.

Arthur H. Nielsen, Salt Lake City, for Jacobsen Const. Co. and Jelco Inc.

HOWE, Justice:

This is an appeal of a subrogation case between the Insurance Company of North America (INA) and Structo-Lite Engineering, Inc. (Structo) and presents the issue of whether Structo was a subcontractor of plaintiffs, Jacobsen Construction Company, Inc. and Jelco Incorporated.

On February 21, 1972 plaintiffs entered into a written contract with the Central Utah Water Conservancy District for construction of the Jordan Water Purification Plant in southwestern Salt Lake County, Utah. Effective the same date, plaintiffs obtained from INA a transportation floater policy naming plaintiffs as insured. By endorsement to the policy, all "subcontractors" on the job were named as additional insureds. The policy was an inland marine, a physical damage type of policy, which insured the work of construction rather than the completed structure. It was not a liability policy. Plaintiffs obtained public liability insurance from Industrial Indemnity Company.

A part of the water purification plant consisted of six large fiberglass tanks to hold liquid alum. Structo entered into a contract with plaintiffs to furnish the tanks. The contract was denominated a Purchase Order. Under its terms, Structo was obligated only to furnish the six tanks and accessory materials F.O.B. job site. It had no obligation to install them or to perform any work on the construction site. It could either fabricate the tanks or obtain them from any source. Plaintiffs were not concerned how Structo obtained them so long as they met the contract specifications.

Structo fabricated the tanks and delivered them to the job site where it attached angle irons to the bottom of the tanks as a means of attaching them to the floor and also drilled holes in the tanks to accommodate necessary plumbing. They were then installed by plaintiffs.

On July 22, 1974 while the District was in the process of starting up the plant, one of the alum tanks exploded causing substantial damage to the plant. The cause of that explosion was examined in a separate but related case where the jury in a special verdict found the District 10 percent negligent, plaintiffs 20 percent negligent, and Structo 70 percent negligent in causing the loss. Judgment was entered in favor of plaintiffs against Structo for the full amount of their damages, less the percentage (20%) attributable to their own negli-

gence. That judgment was affirmed by this Court, *Jacobsen Construction, Inc., et al., v. Structo-Lite Engineering, Inc.,* Utah, 619 P.2d 306 (1980).

INA and Industrial Indemnity Company both denied coverage for the mishap and the instant action was brought against them by plaintiffs. INA filed a third-party complaint against Structo for indemnity based on its subrogation rights. Structo counterclaimed against INA claiming that it was a "subcontractor" of plaintiffs and, as such, was an additional insured under the terms of INA's policy. Therefore, Structo asserted it was not only immune from suit by INA on the policy, but was entitled to recover from INA any loss which it sustained as a result of an insured peril.

At the trial below judgment was entered in favor of plaintiffs against INA. INA promptly satisfied that judgment and the issues between plaintiffs and INA are not involved in this appeal. INA was awarded a judgment on its third-party complaint against Structo for 80 percent of the amount of plaintiffs' judgment against INA (100% less 20% found by the jury to be attributable to plaintiffs' negligence). Structo was found by a special jury verdict not to be a "subcontractor" of plaintiffs and consequently its counterclaim against INA was dismissed. Structo appeals and this appeal deals only with issues between INA and Structo.

At the close of the presentation of evidence, Structo moved for a directed verdict in its favor on INA's third-party complaint arguing that as a matter of law Structo was a subcontractor. The trial court denied the motion. Structo renewed its motion by way of its motions for judgment notwithstanding the verdict and for a new trial. Both of these motions were also denied.

■ Structo assigns as error the refusal of the trial court to give to the jury the following proposed instruction:

Whoever shall do work or furnish materials by contract, express or implied, with the owner, shall be deemed an original contractor, and all other persons doing work or furnishing materials shall be deemed subcontractors.

This definition was taken from U.C.A., 1953, § 38–1–2. We find no error in the refusal to give this instruction. The statute cited is a part of our Mechanics' Lien Law. In order to give a widespread application of the beneficence of that law, the legislature adopted a broad definition of subcontractor and included therein materialmen. It would be unwarranted to extend that broad definition to other contexts such as in the present case where an insurance contract is being examined which apparently intended to differentiate between subcontractors and materialmen. We find no support in the law for extending the application of a specially tailored statutory definition to other unrelated situations.

■ Instead, the trial court gave its Jury Instruction No. 16 defining a subcontractor as follows:

A subcontractor means one who has contracted with the original contractor for the performance of all or a part of the work or services which such contractor has himself contracted to perform.

We conclude that under this definition, which INA approves and asserts is founded on well established case law, Structo was a subcontractor as a matter of law and therefore was an insured under the policy. We reject INA's contention that the jury could have reasonably found Structo to be a materialman and not an insured under this definition. In support of this conclusion, we find helpful an opinion of the Supreme Court of California in the case of *Theisen v. County of Los Angeles,* 54 Cal.2d 170, 5 Cal.Rptr. 161, 352 P.2d 529 (1960). There the defendant county contracted with Theisen for the construction of a fire combat training center. Theisen contracted with Petterson Corporation to supply 64 custom made doors to conform to the architect's specifications. Petterson then contracted with Durrand to supply 20 of such

doors. Durrand fabricated and shipped the doors to Petterson, who in turn delivered them together with the other 44 doors to Theisen. Theisen installed the doors. Neither Durrand nor Petterson entered upon the job site. In defining who was a subcontractor, the court stated, not dissimilar to the instruction given the jury in the instant case, that "the essential feature which constitutes one a subcontractor rather than a materialman is that in the course of performance of the prime contract he constructs a definite, substantial part of the work of improvement in accord with the plans and specifications of such contract." 5 Cal.Rptr. at 161, 352 P.2d at 537. The court held it immaterial that he did not enter upon the job site and do his part of the construction there. Further, said the court:

> We are not here concerned with the mere furnishing of materials from which doors were to be constructed by the general contractor, nor are we interested in the sale of standard stock-in-trade doors. Specifically, we are dealing with a contract whereby the doors were to be fabricated according to the specifications of the prime contract and as a constitutent part of the construction of the public improvement which was the subject of the contract. We do not accept the view of some other jurisdictions (see annotation, 141 A.L.R. 321) that to be a subcontractor one must install work at the site of the improvement. Rather, we conclude that one who agrees with the prime contractor to perform a substantial, specified portion of the work of construction which is the subject of the general contract, in accord with the plans and specifications by which the prime contractor is bound ... is a subcontractor although he does not undertake to himself incorporate such portion of the projected structure into the building. 5 Cal.Rptr. at 161, 352 P.2d at 537.

The court accordingly held Petterson to be a subcontractor and cited in support of its position *Holt & Bugbee Company v. City of*

*Melrose,* 311 Mass. 424, 41 N.E.2d 562, 141 A.L.R. 319 (1942), (fabricating and furnishing a special interior trim for a city hall in accordance with project plans and specifications); *Illinois Steel Warehouse Company v. Hennepin Lumber Company,* 149 Minn. 157, 182 N.W. 994 (1921) (fabrication of steel work for a building according to plans and specifications); *Pittsburgh Plate Glass Company v. Sisters of the Sorrowful Mother,* 83 Minn. 29, 85 N.W. 829 (1901) (manufacture of doors and windows and millwork for hospital building in accordance with plans and specifications).

A similar result was reached in *Sparks Construction, Inc. v. Newman Brothers,* 51 Ala.App. 690, 288 So.2d 749 (1974) (structural steel and ornamental iron for school building in accordance with plans and specifications), in *Weyerhaeuser Company v. Twin City Millwork Company,* 291 Minn. 293, 191 N.W.2d 401 (1971) (1107 custom made wood doors of various sizes, finishes and cores) and in a number of federal cases brought under the Miller Act. See *U.S. v. M.S.I. Corp.,* 350 F.2d 285 (2d Cir.1965) (hydraulic system for opening and closing missile launcher roofs); *J.W. Cooper Construction Company v. Public Housing Administration,* 390 F.2d 175 (10th Cir.1968) (kitchen cabinets in accordance with plans and specifications); *U.S. v. John A. Johnson & Sons, Inc.,* 137 F.Supp. 562 (W.D.Penn.1955) (millwork and related items according to plans and specifications). See also *Tiffany Construction Company v. Hancock & Kelly Construction Company,* 24 Ariz.App. 504, 539 P.2d 978 (1975) for an analysis of who is a subcontractor.

Under the definition of a subcontractor given the jury in the instant case, i.e., "one who has contracted with the original contractor for the performance of all or a part of the work or services which such contractor has himself contracted to perform" or the similar definition enunciated by the California Court in *Theisen v. County of Los Angeles,* supra, i.e., "one who in the course of the performance of the prime contract

constructs a definite, substantial part of the work of improvement in accord with the plans and specifications of such contract," Structo as a matter of law was a subcontractor and not merely a materialman. It is true, as INA points out, there is no direct evidence whether the tanks were available for purchase on the open market. However, other evidence leaves no doubt that they were not and could not have been so obtained. The tanks had to meet very detailed specifications furnished by plaintiffs and Structo had to furnish shop drawings for plaintiffs' approval, followed by six copies of approved drawings. It is clear that such tanks were not shelf or stock-in-trade items which would ordinarily be furnished by a materialman, but were custom-fabricated for the District's plant. INA does not claim the tanks could have been used in any other setting.

It is unimportant that the contract between plaintiffs and Structo was denominated a purchase order. *Wyerhaeuser Company v. Twin City Millwork Company,* supra; *Sparks Construction, Inc. v. Newman Brothers,* supra; *U.S. v. John A. Johnson & Sons, Inc.,* supra. Nor is it material that Structo did not enter upon the job site and actually install the tanks in the District's building. In all the cases cited above where that contention was made, it was expressly rejected. However, the evidence does indicate that after the tanks were delivered to the building Structo bored holes in them to allow for plumbing connections, and also applied a steel flange which attached the tanks to the floor.

The fabrication of the tanks was a substantial, essential and significant requirement of plaintiffs' contract with the District. Without the tanks, the contract could not have been performed by plaintiffs. Reasonable minds could not differ that Structo met the requirements of Instruction No. 16 by its contracting with the plaintiffs "for the performance of all or a part of the work or services" which plaintiffs had contracted to perform. Structo was not merely a materialman. Since Structo was a subcontractor and an insured under INA's policy, our rule in *Board of Education of Jordan School District v. Hales,* Utah, 566 P.2d 1246 (1977) precludes INA from recovering against its own insured.

■ Structo next contends that as an insured of INA, INA had a duty to defend the negligence action brought against Structo by the plaintiffs, the appeal of which is reported at 619 P.2d 306. In support of that argument, Structo cites *American States Insurance Co. v. Walker,* 26 Utah 2d 161, 486 P.2d 1042 (1971); *Gray v. Zurich Insurance Co.,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966); *Home Insurance Co. v. Pinski Brothers, Inc.,* 160 Mont. 219, 500 P.2d 945 (1972). Those cases are distinguishable from the instant case since they involved liability policies where the insurer had a duty to defend actions brought against the insured. As has been heretofore pointed out in this opinion, the policy here involved was not a liability policy but was a transportation floater which insured the work of construction. Structo has not referred us to any policy provision which imposed the duty on INA to defend Structo. Nor did Structo produce any evidence that it ever made demand on INA to defend the negligence action. We therefore reject this contention.

■ Nor is there any merit to Structo's assertion that by initiating a third-party complaint in the instant case against its own insured (Structo), INA breached its duty to act in good faith with Structo and thus should be held liable for the latter's costs and attorney's fees in defending the third-party complaint. While we acknowledge that contracting parties owe each other the duty to deal in good faith, *Zion's Properties, Inc. v. Holt,* Utah, 538 P.2d 1319 (1975), there is no evidence here of bad faith on the part of INA in seeking relief against Structo. The case of *Johansen v. California State Automobile Assn. Inter-Insurance Bureau,* 15 Cal.3d 9, 123 Cal.Rptr.

288, 538 P.2d 744 (1975), relied upon by Structo, involved the liability of an insurer who failed to accept a reasonable settlement offer within the policy limits and thereby subjected the insured to a judgment which exceeded the policy limits. The court held the insured liable for the full amount of the judgment even though no bad faith on the part of the insured was shown. We do not have that fact situation here, viz., exposure to liability, and thus that case is not applicable.

The judgment below entered on the third-party complaint is reversed and the case remanded to the trial court to enter judgment in favor of Structo in accordance with this opinion. The judgment on Structo's counterclaim is affirmed. Costs are awarded to Structo.

STEWART, J., concurs.

TAYLOR, District Judge, heard the arguments, but died before this opinion was filed.

DURHAM, J., does not participate herein.

OAKS, Justice (concurring specially):

I concur in those portions of the majority opinion which hold (1) that it was not error to reject Structo's instruction based upon the mechanic's lien law, (2) that INA had no duty to defend the negligence action brought against Structo by Jacobsen Construction, (3) that INA breached no duty by initiating a third-party complaint against its own insured (Structo) in this case, and (4) that Structo had no right to recover on its counterclaim against INA. On the central question of Structo's subcontractor status, I concur in the result.

For the reasons explained below, I conclude that the definition of "subcontractor" in Instruction 16, quoted in the footnote,[1] was erroneous in that it included suppliers

who should not be included in that favored status for purposes of coverage under the contractor's insurance. In other words, the instruction was too favorable to Structo. If INA had excepted to this instruction, we should have remanded the case for a new trial under the standard discussed below. But INA effectively acquiesced in the correctness of Instruction 16 by taking no exception, by arguing its content to the jury, and by taking no cross-appeal. In that circumstance, the legal definition of "subcontractor" in that instruction became the law of the case as far as INA is concerned, and will not be changed to its advantage on appeal. *Pettingill v. Perkins,* 2 Utah 2d 266, 269, 272 P.2d 185, 186–87 (1954); *Lindgren v. Voge,* 260 Minn. 262, 271, 109 N.W.2d 754, 761 (1961); *Holtfoth v. Rochester General Hospital,* 304 N.Y. 27, 105 N.E.2d 610 (1952); *Schedler v. Wagner,* 37 Wash.2d 612, 617, 230 P.2d 600 (1951); 5 Am.Jur.2d *Appeal & Error* § 623 (1962).

Reviewing the evidence according to the definition in Instruction 16, I concur in the majority's conclusion that Structo was a subcontractor as a matter of law, so that Structo's motion for a directed verdict on INA's third-party complaint should have been granted.

In the remainder of this opinion, I will suggest why Instruction 16 was not an accurate statement of the law and should not be used in future cases.

In former times, the distinction between subcontractor and materialman in controversies over a supplier's right to obtain payment from the contractor's bond or insurance turned largely on whether a supplier furnishing materials for construction installed them or performed other work on them at the construction site. *Annot.,* 141 A.L.R. 321 (1942). In apparent response to changes in construction techniques and relationships, many jurisdictions have modified this rule, and the more modern cases have

---

1. A subcontractor means one who has contracted with the original contractor for the performance of all or a part of the work or services which such contractor has himself contracted to perform.

groped for a different test. The performance of significant on-site work, such as installation, would still qualify a supplier as a subcontractor, but the fact that no work was performed on-site would not necessarily disqualify a supplier from subcontractor status. *E.g., Holt & Bugbee Co. v. City of Melrose,* 311 Mass. 424, 41 N.E.2d 562, 141 A.L.R. 319 (1942); *Weyerhaeuser Co. v. Twin City Millwork Co.,* 291 Minn. 293, 191 N.W.2d 401 (1971); *United States v. MSI Corp.,* 350 F.2d 285 (2d Cir.1965).

There are apparently no governing precedents in this state to distinguish for this purpose between the meaning of "subcontractors" (who are explicitly covered in construction bonds and insurance policies) and materialmen (who are not so covered). The definition that emerges from this case should be consistent with the intent of the contracting parties and should implement a distinction between subcontractor and materialman that is clear, workable, and sensible in the context of the commercial relationships involved.

Instruction 16 and most of the recent cases seem to base their distinction between subcontractor and materialman on the *terms of the contractual relation* between the prime contractor and the supplier. This approach probably stems from the decision in *MacEvoy v. United States,* 322 U.S. 102, 108–09, 64 S.Ct. 890, 894, 88 L.Ed. 1163 (1944), which defined a subcontractor as one "who has a contract to furnish labor or material to the prime contractor," but more specifically, under the usage in the building trades, as "one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, thus excluding ordinary laborers and materialmen." Although lacking in certainty and sharpness in distinguishing between subcontractors and materialmen, this definition clearly directs the

focus of inquiry to the terms of the contract under which the supplier performs.

The problem with the terms-of-the-contract approach is that it must be supplemented with other tests or it can be manipulated to include virtually every materialman within its terms. *All* who furnish materials can be said to contract with the prime contractor or his subcontractors for part of the work or services the prime contractor has agreed to perform. Consequently, it is not surprising to find courts that ostensibly apply the terms-of-the-contract test declaring that the status of a supplier is not dependent upon the title of the contracting instrument (*e.g.,* contract or purchase order) or how the supplier is designated there (*e.g.,* subcontractor or vendor). *United States v. Lembke Construction Co.,* 370 F.2d 293, 296 (10th Cir.1966); *Weyerhaeuser Co., supra,* 191 N.W.2d at 404. Courts have also added the requirement that to be a subcontractor the party must have contracted to perform a "substantial part" of the work, and to do so in accordance with plans and specifications provided by the prime contractor. *E.g., Theisen v. County of Los Angeles,* 54 Cal.2d 170, 352 P.2d 529, 538, 5 Cal.Rptr. 161, 170 (1960).[2]

The policy reason for restricting the application of the terms-of-the-contract test, as stated in such cases as *MacEvoy v. United States, supra,* and *Tiffany Construction Co. v. Hancock & Kelley Construction Co.,* 24 Ariz.App. 504, 510, 539 P.2d 978, 984 (1975), is to place workable limits on the favored classification of subcontractors. Otherwise, the status of subcontractor could theoretically extend down the chain of commercial contacts to hundreds of suppliers who had some supply or service function furthering the prime contract but in a relationship so remote that it would be unworkable and unfair to give them the benefit of bond or insurance contracts meant to bene-

**2.** One court carried this principle so far as to hold that a party which had fabricated iron and steel on specifications expressly for a construction contract was not a subcontractor because its work was not a "large and definable part of

the construction project," since it comprised only about two percent of the total construction cost. *Aetna Casualty & Surety Co. v. United States,* 382 F.2d 615, 617 (5th Cir.1967).

fit the prime contractor and those most immediate to it and to the performance of its function. The problem with the terms-of-the-contract test is that it lacks the precision necessary to carry out the purpose of the rule. The same is true of the test of whether the article supplied was actually fabricated by specification for the particular job (the test relied upon in Justice Howe's opinion). This can be illustrated with examples.

Suppose a construction job required 200 two-by-fours 8 feet in length, and a lumber supplier contracted to provide them. Later, because its stock of two-by-fours in that length was temporarily depleted, the supplier cut lumber specifically to meet the contract specifications. This lumber supplier should not be a subcontractor for purposes of the prime contractor's payment bond or insurance coverage on construction, even if this quantity of lumber made up a very significant proportion of the prime contractor's total performance. Similarly, if detailed specifications for wooden cabinets on a particular construction job could be met by the delivery of cabinets commonly used and generally stocked for sale in the trade, the supplier of those cabinets should not be a subcontractor for these purposes, even if the supplier specially fabricated the cabinets according to specifications for this particular contract.

As is evident from these simple examples, the critical element in determining whether a supplier is a subcontractor or a materialman for this purpose should not be how the

supplier is identified in the contract (or purchase order), the size of the contract (either absolutely or in proportion to the overall work), or whether the supplier follows contract specifications in preparing the item specially for delivery on this particular job. The critical consideration should be whether the article being supplied is uniquely suited to this particular job, in the sense that it (1) was not readily available on the market as a stock-in-trade item and (2) could not be sold to others in the ordinary course of business without material sacrifice if it were not used on this particular job.[3] If the item is uniquely suited to the prime contract under this test, its supplier should be a subcontractor for this purpose; otherwise, it should not.

The test suggested above corresponds to an element used in many of the modern cases cited in the majority opinion.[4] Unlike its incidental treatment in those opinions, however, I submit that it should be the dispositive consideration in the definition of subcontractor for this purpose.

HALL, C.J., concurs in the concurring opinion of OAKS, J.

---

**3.** Compare U.C.A., 1953, § 70A–2–201(3)(a), which employs a similar two-part test for identifying unique goods in a different commercial context.

**4.** For example, *Theisen, supra,* 54 Cal.2d at 183, 352 P.2d at 537, 5 Cal.Rptr. at 169, stressed that the doors were not standard stock-in-trade items. *Holt, supra,* 311 Mass. at 426, 41 N.E.2d at 563, distinguished interior trim prepared according to contract specifications and not available on the open market from products the supplier had prepared for its own specifications. *Weyerhaeuser, supra,* 291 Minn. at 298–99, 191 N.W.2d at 404–05, em-

phasized that the doors were not items readily available through ordinary building suppliers. *MSI Corp., supra,* 350 F.2d at 287, stressed that the hydraulic system was built to specifications and was not generally available on the open market. In holding that suppliers were not subcontractors, both *Lembke, supra,* 370 F.2d at 295–96, and *Tiffany, supra,* 24 Ariz.App. at 511, 539 P.2d at 985, emphasized that the specifications for the concrete and the rock chips furnished in those cases were merely descriptive of the type of product to be furnished rather than an identification of a customized product.