**2013 UT App 256**

# THE UTAH COURT OF APPEALS

AMERICA FIRST CREDIT UNION,
Plaintiff,

*v.*

KIER CONSTRUCTION CORPORATION,
Defendant, Third-party Plaintiff and Appellee,

*v.*

BROBERG MASONRY, INC. AND *OWNERS INSURANCE COMPANY*,
Third-party Defendants and *Appellant*.

Opinion
No. 20101036-CA
Filed October 24, 2013

Second District Court, Ogden Department
The Honorable Scott M. Hadley
No. 080905646

Richard K. Glauser and Jared R. Casper, Attorneys
for Appellant
Jack W. Reed and Matthew D. Ormsby, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES CAROLYN B. MCHUGH and STEPHEN L. ROTH
concurred.

CHRISTIANSEN, Judge:

¶1     Owners Insurance Company (Owners) challenges the
district court's denial of its motion for summary judgment. We
reverse and remand.

BACKGROUND

¶2     The material facts in this case are undisputed. In April 2002, America First Credit Union (AFCU) and Kier Construction Corporation (Kier) entered into a contract for Kier to act as the general contractor in the construction of an AFCU branch office building in Slaterville, Utah. Kier subcontracted with Broberg Masonry, Inc. (Broberg) to supply and install manufactured stone veneer for the building. As part of its contract with Kier, Broberg was required to obtain a commercial general liability insurance policy (the CGL policy). Broberg obtained the CGL policy from Owners and also obtained an endorsement thereto listing Kier as an "Additional Insured."

¶3     The CGL policy is a standard commercial general liability policy similar to those commonly used in the construction industry. It provides that Owners will defend the insured in any suit against the insured seeking damages that are payable under the terms of CGL policy. The relevant policy provisions provide:

>    1. Insuring Agreement.

>    >    a. [Owners] will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

>    >    . . . .

>    >    b. This insurance applies to . . . "property damage" only if:

>    >    >    (1) The . . . "property damage" is caused by an "occurrence". . . .

The CGL policy also generally excludes coverage for "'property damage' to 'your product' . . . [and] to 'your work.'"

¶4 After AFCU filed a breach of contract action against Kier alleging defective construction due to the cracking and failing of the exterior masonry work on the building, Kier filed a third-party complaint against Broberg and Owners. Owners filed a motion for summary judgment, arguing that the CGL policy did not provide coverage to Kier for AFCU's claims against it under these circumstances. The district court ruled that the CGL policy did provide coverage to Kier and denied Owners' motion for summary judgment. Specifically, the district court determined that a covered "occurrence" had taken place because Kier, the general contractor, did not expect to be liable for any damages arising from a subcontractor's faulty work; that the damage to the building's exterior was "property damage"; and that none of the CGL policy's exclusions applied to limit Owners' duty to defend and indemnify Kier. Owners challenges those determinations through an interlocutory appeal, which this court granted.

## ISSUES AND STANDARD OF REVIEW

¶5 Owners argues that the district court erroneously interpreted the CGL policy and denied its motion for summary judgment. "Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. We review a district court's grant of summary judgment for correctness and afford no deference to the court's legal conclusions." *Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 2011 UT 33, ¶ 18, 258 P.3d 539. Furthermore, "[a]n insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts." *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993). Accordingly, we review the district court's interpretation of the CGL policy for correctness. *See Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 2009 UT 7, ¶ 11, 210 P.3d 263.

ANALYSIS

I. The District Court Erred in Denying Owners' Motion for
Summary Judgment Because the CGL Policy Excludes Coverage
for AFCU's Property Damage Claims.

¶6      Owners challenges the district court's determinations that
the failure of the veneer constituted an "occurrence" involving
"property damage" sufficient to trigger coverage under the CGL
policy. We need not reach those issues, however, because we are
persuaded by Owners' argument that the CGL policy excludes
coverage for the damage at issue here.

¶7      Paying an insurance premium secures coverage for damage
only to the extent provided for in the policy. "Structurally, a CGL
policy 'begin[s] with a broad grant of coverage, which is then
limited in scope by exclusions. Exceptions to exclusions narrow the
scope of the exclusion, and, as a consequence, add back coverage.'"
*Greystone Constr., Inc. v. National Fire & Marine Ins. Co.*, 661 F.3d
1272, 1289 (10th Cir. 2011) (alteration in original) (quoting David
Dekker et al., *The Expansion of Insurance Coverage for Defective
Construction*, Constr. Lawyer, Fall 2008, at 19–20). Owners argues
that even if there was an "occurrence" and "property damage"
within the meaning of the CGL policy, the exclusions in
subsections k and *l* of the CGL policy exclude coverage for
property damage to work performed or products furnished by
Broberg. The exclusions read, in relevant part,

> This insurance does not apply to:
>
> . . . .
>
> k.      "Property damage" to "your product" arising
>         out of it or any part of it.
>
> *l.*      "Property damage" to "your work" arising
>         out of it or any part of it and including in the
>         "products-completion operations hazard[."]

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The CGL policy defines "your work" to mean "[w]ork or operations performed by you or on your behalf[] and . . . [m]aterials, parts or equipment furnished in connection with such work or operations" and includes any warranties or representations made with respect to such work. Likewise, the CGL policy defines "your product" to mean "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by . . . [y]ou" or certain related entities not relevant here, and includes any warranties or representations made with respect to such products. Owners argues that the district court erroneously interpreted the CGL policy when it determined that the term "'[y]ou' refers to the named insured, i.e., Kier." Owners contends that, as a result, the district court erred in concluding that the exclusions for damage to "your work" and "your product" did not apply and that coverage existed under the CGL policy for AFCU's damage claims.

¶8     To determine if the district court erred, we must first address whether it properly interpreted "you" and "your" within the context of the above exclusions and then determine whether the exclusions apply. "To determine whether the policy provides coverage, we turn to the express language of the policy." *Pollard v. Truck Ins. Exch.*, 2001 UT App 120, ¶ 7, 26 P.3d 868. "An insurer may limit its obligation to provide coverage by exclusions phrased in language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided." *Id.* ¶ 12 (citation and internal quotation marks omitted). "Unless there is some ambiguity or uncertainty in the language of the policy, it should be enforced according to its terms." *Id.* (citation and internal quotation marks omitted).

A. "You" and "Your" as Used in the CGL Policy Refer to Broberg as the Named Insured and Not to Kier as an Additional Insured.

¶9 In evaluating whether the exclusions in subsections k and *l* applied to bar coverage of defects in the building's veneer, the district court explicitly determined that "'[y]ou' refers to the named insured, i.e., Kier." Owners argues that the district court erroneously identified Kier as the named insured—and therefore as "you"—under the CGL policy.[1] We agree with Owners.

¶10 "[I]n the absence of ambiguity, we interpret the terms of an insurance policy according to their plain meaning." *Pollard*, 2001 UT App 120, ¶ 7 (citation and internal quotation marks omitted). The CGL policy states, "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." The only Named Insured identified in the CGL policy Declarations is Broberg. The only provision in the CGL policy that provides for entities other than those identified in the Declarations to qualify as a Named Insured is Section II(4).

---

[1]Kier asserts that the issue of whether the district court properly interpreted the CGL policy "from Kier's perspective" was not preserved below. However, the issue of whether the exclusions for damage to "your work" and "your product" applied was clearly raised to the court by both Owners and Kier. Kier asserted below that because Broberg was a subcontractor of Kier, the exclusions did not apply, and Owners argued that because the damages were to Broberg's work, the exclusions did apply. The district court specifically ruled that in the context of these exclusions, "'[y]ou' refers to the named insured, i.e., Kier." Thus, the issue of whether "you" and "your" in the exclusions properly referred to Kier or Broberg is preserved because it was "specifically raised" to the district court "in such a way that the [district] court ha[d] an opportunity to rule on that issue." *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (citation and internal quotation marks omitted).

Section II(4) provides for an entity newly acquired or formed by "you" (the Named Insured) to qualify as a Named Insured itself under certain circumstances. Any other person qualified under the CGL policy is merely an "insured," and not a Named Insured. The endorsement adds Kier to the CGL policy as an Additional Insured, not a Named Insured, and Kier does not qualify as a Named Insured under any other provision of the CGL policy. Accordingly, as used in the CGL policy, "you" and "your" refer only to Broberg, the Named Insured shown in the Declarations. Thus, the district court erred in concluding that Kier was a Named Insured under the CGL policy and that "you" referred to Kier.[2] *See Pollard*, 2001 UT App 120, ¶ 8 (concluding that under the plain language of a commercial insurance policy, an individual identified as "insured" did not fall within the policy's definition of "You" as the "Named Insured shown in the declarations"); *see also National Union Fire Ins. Co. v. Liberty Mut. Ins. Co.*, 234 F. App'x 190, 192 n.2, 193–94 (5th Cir. 2007) (holding that because "you" was defined in the insurance policy as "the Named Insured shown in the Declarations," "you" did not include the additional insureds under the policy).

B.      Exclusions in subsections k and *l* of the CGL Policy Exclude Coverage for Property Damage to Broberg's Work and Products.

¶11     Under the provisions of the CGL policy, Owners agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this

---

[2]The district court's reliance on *Great American Insurance Co. v. Woodside Homes Corp.*, 448 F. Supp. 2d 1275 (D. Utah 2006), was misplaced. Although the court in *Great American* determined that the subcontractor's faulty work was an "occurrence" under the general contractor's CGL policy, that court was interpreting whether the general contractor's CGL policy provided coverage for the general contractor for damages done by subcontractors. *See id.* at 1277, 1279–83. Here, the general contractor and additional insured, Kier, is seeking coverage under its subcontractor's CGL policy.

insurance applies." However, provisions in the CGL policy exclude coverage for "'[p]roperty damage' to 'your product' arising out of it or any part of it" (Exclusion k) and "'[p]roperty damage' to 'your work' arising out of it or any part of it and including in it the 'products-completed operations hazard'" (Exclusion *l*). Because we have determined that "you" and "your" as used in the policy refer only to Broberg, the district court erred in evaluating Exclusion k and Exclusion *l* from the standpoint of Kier, rather than Broberg. Thus, read correctly, the policy excludes coverage for "'[p]roperty damage' to '[Broberg's] product' arising out of it or any part of it" and "'[p]roperty damage' to '[Broberg's] work' arising out of it or any part of it."

1. Exclusion k Excludes Coverage for Property Damage to Broberg's Product.

¶12 The district court erred in determining that because "there is no evidence that the [building's] veneer was Kier's product or that it handled the veneer at any time," Exclusion k could not apply to exclude coverage for damage to the veneer. Rather, because the CGL excludes coverage for damage to "[Broberg's] product," Exclusion k excludes coverage for "property damage" to "[a]ny goods or products . . . manufactured, sold, handled, distributed or disposed of by . . . [Broberg]," such as the stone veneer.

¶13 Kier argues that Exclusion k does not apply to damage to other construction elements that are not Broberg's product, such as the underlying plywood sheathing. However, as Owners correctly notes, the only evidence Kier has identified that suggests there was damage to any other construction element was struck by the district court as inadmissible. Kier does not challenge on appeal the district court's ruling striking this evidence and therefore cannot rely on the excluded evidence to argue that some coverage may have existed notwithstanding Exclusion k. Accordingly, we conclude that Exclusion k applies and that it bars coverage for any damage to Broberg's product.

2.  The Subcontractor Exception to Exclusion *l* Does Not Restore Coverage Eliminated by Exclusion *l*.

¶14   The district court also erred when it concluded that the subcontractor exception to Exclusion *l* restored coverage for damage to the stone veneer because "this exclusion does not apply to the work performed by Broberg on behalf of Kier." The subcontractor exception reads, "[Exclusion *l*] does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." The district court's conclusion that this exception restored coverage is based on its erroneous determination that "you" as used in the CGL policy referred to Kier and that work performed by Broberg was therefore work "performed on your behalf by a subcontractor." However, because the subcontractor exception, properly read, only restores coverage for work "performed on [Broberg's] behalf by a subcontractor," this exception does not apply to restore coverage for damage to the stone veneer—work performed by Broberg, not a subcontractor of Broberg. *See National Union Fire Ins. Co. v. Liberty Mut. Ins. Co.*, 234 F. App'x 190, 194 (5th Cir. 2007) ("Because the contract defines 'you' as American Pipe, the exception applies when someone else does work as American Pipe's subcontractor, not when American Pipe is a subcontractor. '[O]n your behalf' becomes 'on American Pipe's behalf,' so [the general contractor and additional insured] cannot obtain the benefit of this exception, because no one worked on American Pipe's behalf." (first alteration in original)). And because the damage to the veneer was damage to "[Broberg's] work" within the meaning of the CGL policy, the district court erred in concluding that Exclusion *l* did not bar coverage for the damage to the stone veneer.

¶15   Kier argues that even under the correct reading of the CGL policy, the subcontractor exception to Exclusion *l* nevertheless restores coverage for damage to the veneer because "the manufacturer of the stone veneer Broberg installed . . . is a subcontractor of Broberg" under *Jacobsen Construction Co. v. Industrial Indemnity Co.*, 657 P.2d 1325 (Utah 1983). "A subcontractor means one who has contracted with the original contractor for the performance of all or a part of the work or

services which such contractor has himself contracted to perform." *Id.* at 1327. We do not agree that the stone veneer constitutes work performed on Broberg's behalf by a subcontractor simply because Broberg purchased the material to install the stone veneer from a manufacturer of stone products.

¶16    In *Jacobsen*, our supreme court's determination that a material supplier was a subcontractor was premised on the custom and specialized nature of the fiberglass tanks provided by the supplier. *Id.* at 1327–29. Indeed, the supreme court quoted with approval from a California Supreme Court decision, "'We are not here concerned with the mere furnishing of materials from which doors were to be constructed by the general contractor, nor are we interested in the sale of standard stock-in-trade doors.'" *Id.* at 1328 (quoting *Theisen v. County of Los Angeles*, 352 P.2d 529, 537 (Cal. 1960) (in bank)). The *Jacobsen* court went on to observe that the fiberglass tanks at issue could not have been obtained in the open market, were produced to meet detailed specifications, and were not stock-in-trade items of the type ordinarily furnished by a materials supplier, but were custom fabricated for the project at issue in the case. *Id.* at 1329. Accordingly, the court concluded that the supplier of the custom fiberglass tanks was a subcontractor as a matter of law. *Id.*

¶17    Here, Kier does not develop its argument that the stone manufacturer was a subcontractor of Broberg beyond the conclusory statement that, as the manufacturer of the stone product used in the veneer, it was a subcontractor under *Jacobsen*. Kier does not argue that the stone was custom fabricated or cite any record evidence suggesting that it was. Kier's only relevant factual claim is that "Broberg purchased the manufactured stone veneer product used on the project from [the manufacturer]." Based on the record before us, which demonstrates only that Broberg purchased materials from the stone manufacturer, we do not agree that the stone manufacturer was a subcontractor under *Jacobsen*.

¶18    Because the terms "you" and "your" as used in Exclusion k and Exclusion *l* refer to Broberg, the district court erred in determining that Kier was the subject of those exclusions and that

coverage was therefore available under the CGL policy for the damage to the stone veneer.

CONCLUSION

¶19    The district court erred in determining that Kier was a Named Insured under the CGL policy and therefore the subject of the CGL policy's exclusions for damage to "your work" and "your product." Properly interpreted, these exclusions bar coverage for AFCU's alleged damages, and Owners is not liable to cover these damages under the CGL policy as a matter of law. We reverse the district court's denial of Owners' summary judgment motion and remand for entry of summary judgment in favor of Owners.[3]

──────────

[3]Due to this dispositive determination, we need not address the other arguments made on appeal. We note, however, that Kier also argues that Broberg was required by the contract to provide insurance coverage for defective work. Though Kier may be able to demonstrate that Broberg failed to obtain such coverage and thereby breached its contract with Kier, such failure would not result in a determination that Owners is required to provide additional coverage not obtained by Broberg.